# IN THE UNITED STATES COURT OF APPEALS

## FOR THE

## FOURTH CIRCUIT COURT OF APPEALS

Asad Samee Niyaz

**Plaintiff- Appellant**

V

**Case# 11-1101, <u>Asad Niyaz V. Bank of America</u>**
**1:10-cv-00796-JCC-TCB**

Bank of America et al

**Defendant –Appellee**

# APPELLANT MOTION FOR STAY OR INJUNCTION

## PENDING APPEAL

Comes now Asad Sammi Niyaz, Pro Se Plaintiff Appellant, moves the Honorable

court and requests for stay and injunction as under;

## <u>NATURE OF ACTION</u>

This case arises out of Defendants' egregious and ongoing and far reaching

fraudulent Schemes for improper use of Plaintiff's identity, fraud in the

inducement, fraud in the Execution, usury, and breaches of contractual and

fiduciary obligations as Mortgagee or "Trustee" on the Deed of Trust, "Mortgage

Brokers," "Loan Originators," "Loan Seller", "Mortgage Aggregator," "Trustee of

Pooled Assets", "Trustee or officers of Structured Investment Vehicle",

"Investment Banker", "Trustee of Special Purpose Vehicle/Issuer of Certificates

of 'Asset-backed Certificates'", "Seller of 'Asset-Backed' Certificates (shares or

1

bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled together in a trust fund.

## INTRODUCTION

1. On 01/26/2007, Appellant and the co-borrower Imam Mehboob signed a mortgage note[1] in favor of "America's Wholesale Lender" a factious[2] trade name of Countrywide. A number of countrywide cases come up with the Note titled to "Americas Wholesale Lender."  Nowhere in the Note is Countrywide actually mentioned. Countrywide claims to be using the AWL name as a "trade name" but of course Countrywide cannot sue or maintain any cause of action in the name of a trade name.  Please See NOTE as **EXHIBIT-A** and Deed of Trust as **EXHIBIT-B**

2. The name of "America's Wholesale Lender[3]" turns out to be a fictitious name (d/b/a) of some other entity. The use of fictitious names can get complicated and usually requires a court to sort it out. In the Appellant's case, which is nearly identical to several dozen with other parties, the "originating lender America's Wholesale Lender" is not even a legal entity. A legal entity is a natural person or a corporation or other business structure formed under the laws of a specific State. These "lenders" do not have a legal existence if they do not conform to state statute.

---

[1] Appellant signed a note but the investor received a "BOND" both are not the same and having different terms.
[2] Legally, the naming of a fictitious entity creates no rights under that instrument so neither the note nor the mortgage or Deed of Trust would be a valid obligation or encumbrance.

[3]

3. The fictitious name "party" has no legal existence and cannot sue or defend any action. The legally formed entity with that name technically could claim the payments or rights under the obligation, note or mortgage (Deed of Trust) but obviously does not want to become embroiled in litigation over a deal with which it knows nothing about.

4. The fact that it was a table-funded loan (where the source of funding is hidden) may give rise to defenses and claims by the Appellant. Allowing fictitious entities to initiate foreclosures and sales clouds title further and open the door for moral hazard on the same scale that produced this mess in the first place.

5. On 04/10/2007, at Hartford, Connecticut the **Defendant Countrywide was imposed $401,750) as a civil penalty and sanctions in a settlement agreement for Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender** and the Banking Commissioner as per administration of Part I of Chapter 668, Sections 36a-485 to 36a-534a, inclusive, of the Connecticut General Statutes, "Mortgage Lenders, Brokers and Originators"; The settlement agreement was signed by the Banking Commissioner, Haward F.Pitkin and the Mr. Andrew Gissinger III, President and Chief Operating Officer Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender. The following assurance was given by the Countrywide;

I, Andrew Gissinger III, state on behalf of Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender, that I have read the foregoing Settlement Agreement; that I know and fully understand its contents; that I am authorized to execute this Settlement Agreement on behalf of Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender; that Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender agree freely and without threat or coercion of any kind to comply with the terms and conditions stated herein; and that Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender voluntarily agree to enter into this Settlement Agreement, expressly waiving any right to a hearing on the matters described herein.

By: _____/s/_____
    Andrew Gissinger III, President and
    Chief Operating Officer
    Countrywide Home Loans, Inc. and Countrywide
    Home Loans, Inc. d/b/a America's Wholesale Lender

State of:  California

County of:  Los Angeles

1. AMERICA'S WHOLESALE LENDER *v.* LINDA K. SILBERSTEIN ET AL. (AC 24592) *Argued October 15, 2004—officially released February 15, 2005, opinion by Hon.* DRANGINIS, J.

> "This appeal is similar to the appeal in *America's Wholesale Lender* v. *Pagano*, 87 Conn. App. 474, A.2d (2005), which we released on the same date as this opinion. The dispositive issue is whether a corporation that brings an action solely in its trade name, without the corporation being named as a party, has standing so as to confer jurisdiction on the court. We conclude that because a trade name is not an entity with legal capacity to sue, the corporation has no standing to litigate the merits of the case. We therefore reverse the judgment of the trial court"

6. An assignee, however, may not commence an action solely in a trade[4]

---

[4] *America's Wholesale Lender* v. *Pagano*, supra, 87 Conn. App. 474, in which we held that the court lacked subject matter jurisdiction because Countrywide had commenced an action solely in its trade

name either, regardless of the entity to which the trade name applies, because a trade name is not an entity with the legal capacity to sue. See also *Buxton* v. *Ullman*, 147 Conn. 48, 60, 156 A.2d 508 (1959), appeal dismissed sub nom. *Poe* v. *Ullman*, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961). We also recognize the heightened interest of the public in knowing who is financially and personally liable for the actions of entities doing business under trade names. *America's Wholesale Lender* v. *Pagano*, supra, 479–80.

7. Mortgage Electronic Registration System Inc "MERS" was not a creditor but was named as beneficiary on the Deed of Trust. "MERS" name was not there on the Note.

8. Nor will ever be the actual lender, beneficiary or mortgagee in any transaction. The effect of naming MERS [5]as beneficiary, without being a creditor and having no name on the promissory note, raises factual issues since there are questions regarding title raised by the conflict between naming MERS and MERS disclaiming any such interest. So therefore MERS is not authorized to initiate the assignment of Deed of Trust in violation of "PSA: and "REMIC"

9. Countrywide never transferred the note to Bank of America when Bank of America bought the servicing rights from the countrywide in July 1,

---

name. Our decision in that case rested primarily on the mandate that parties not use fictitious names.
[5] MERS, as beneficiary on Deed of Trust is a Portal between two Universes of Commercial Law: Negotiable instrument and Mortgage Law. As there is No Corpus, there is NO Trust. The customized form of Mortgage deed utilized by MERS in Paragraph C and the grantee clause in particular is not entitled to any of the statutory mortgagee protections provided.

2008. BAC Home Loans servicing have publically stated that it was "customary for Countrywide[6] to maintain possession of the original note and related documents." This means that Country wide did not transfer the note and delivered to BAC Home Loans servicing and the Trustee.

10.      Linda DiMartini[7], a supervisor and operational team leader for the Litigation Management Department of BAC Home Loans Servicing, testified in the foreclosure case of Mr. John T. Kemp,  Bankruptcy case No. 08-18700 and Adversary No. 08-02448

11.      During oral argument, BOA's attorney conceded that DiMartini testimony was accurate and that as a result, BOA had failed to deliver the note at issue in that case to the trust under the contract or otherwise applicable law.If the note in the present case has not been transferred from Countrywide to BOA, as is likely that: (i)The contracts that created the trusts would typically forbid transferring the loans into the trusts now. (ii) Even if somehow the note could now be transferred, such a transfer would destroy the special tax status the mortgage backed securities enjoy.  a) Federal law requires the notes to be at the REMIC[8]

---

[6] "But this is the first time Appellant has seen someone under oath admit there was a policy not to deliver the notes.

[7] Ms. Linda DiMartini under oath testimony is attached as **EXHIBIT-C**

[8] Real Estate Mortgage Investment Conduits, or "REMICs," (sometimes also called Collateralized mortgage obligations) are a type of special purpose vehicle used for the pooling of mortgage loans and issuance of mortgage-backed securities. They were introduced in 1987 and are defined under the United States Internal Revenue Code (Tax Reform Act of 1986), and are the typical vehicle of choice for the securitization of residential mortgages in the US. A REMIC itself is exempt from federal taxes, although income earned by investors is fully taxable. As REMICs are typically exempt from tax at the entity level, they may invest only in qualified mortgages and permitted investments, including single family or multifamily mortgages, commercial

trustees, held against the MBSs sold on to investors.  The note must be
presented to foreclose. b) Documents demonstrate that failure to properly
endorse the notes and transfer them to the REMIC trustee was not an
occasional mistake, but rather the MERS's business model.

## NOTE IS NOT ENDORSED AND TRANSFERRED

In Appellant's case the note was not endorsed, transferred and delivered as
required by the pooling and Servicing Agreement, "PSA" section 2.01 ( c ) (i)
(Conveyance of Mortgage Loan); page 64 0f 169 of PSA

> (i) (A) the original Mortgage Note endorsed by
> manual or facsimile signature  in blank in the
> following form: *"Pay to the order of* _____
> *without recourse,"* with all intervening
> endorsements   showing a complete chain of
> endorsement from the originator to the Person

---

mortgages, second mortgages, mortgage participations, and federal agency pass-through
securities. Nonmortgage assets, such as credit card receivables, leases, and auto loans are
ineligible investments. The Tax Reform Act made it easier for savings institutions and real
estate investment trusts to hold mortgage securities as qualified portfolio investments. A
savings institution, for instance, can include REMIC-issued mortgage-backed securities as
qualifying assets in meeting federal requirements for treatment as a savings and loan for tax
purposes.

To qualify as a REMIC, an entity or pool of assets must make a REMIC election, follow certain
rules as to composition of assets (by holding qualified mortgages and permitted investments),
adopt reasonable methods to prevent disqualified organizations from holding its residual
interests, and structure investors' interests as any number of classes of regular interests and
one -- and only one -- class of residual interests.

Though REMICs provide relief from entity-level taxation, their allowable activities are quite
limited "to holding a fixed pool of mortgages and distributing payments currently to
investors."[23] A REMIC has some freedom to substitute qualified mortgages, declare
bankruptcy, deal with foreclosures and defaults, dispose of and substitute defunct mortgages,
prevent defaults on regular interests, prepay regular interests when the costs exceed the value
of maintaining those interests,[24] and undergo a qualified liquidation,[25] in which the REMIC
has 90 days to sell its assets and distribute cash to its holders.[26] All other transactions are
considered to be prohibited activities and are subject to a penalty tax of 100%,[27] as are all
non-qualifying contributions.

http://en.wikipedia.org/wiki/Real_Estate_Mortgage_Investment_Conduit.

endorsing the Mortgage Note (each such
endorsement being sufficient to transfer all right,
title and interest of the party so endorsing, as note
holder or assignee thereof, in and to that Mortgage
Note)"

12.   Section 2.02 (Acceptance by the Trustee of the Mortgage Loan (page66,

67 of 169 of PSA) states as;

"(a) The Trustee acknowledges receipt of the
documents identified in the Initial Certification in
the form annexed hereto as **Exhibit F-1** and
declares that it holds and will hold such
documents and the other documents delivered to it
constituting the Mortgage Files, and that it holds
or will hold such other assets as are included in
the Trust Fund, in trust for the exclusive use and
benefit of all present and future Certificate holders.
The Trustee acknowledges that it will maintain
possession of the Mortgage Notes in the State of
California, unless otherwise permitted by the
Rating Agencies.

The Trustee agrees to execute and deliver on
the Closing Date to the Depositor, the Master
Servicer and Countrywide (on its own behalf and
on   behalf of Park Granada, Park Monaco and
Park Sienna) an Initial Certification in the form
annexed hereto as **Exhibit   F-1.** Based on its
review and examination, and only as to the
documents identified in such Initial Certification,
the Trustee acknowledges that such documents
appear regular on their face and relate to such
Mortgage Loan.

On or about the thirtieth (30th) day after the
Closing Date, the Trustee shall deliver to the
Depositor, the Master Servicer and Countrywide
(on its own behalf and on behalf of Park Granada,
Park Monaco and Park Sienna) a **Delay
Delivery Certification** with respect to the
Mortgage Loans in the form annexed hereto as
**Exhibit G-1,** with any applicable exceptions
noted thereon.  **Not later than 90 days after
the Closing Date,** the Trustee shall deliver to
the Depositor, the Master Servicer and
Countrywide (on its own behalf and on behalf of
Park Granada, Park Monaco and Park Sienna) a
**Final  Certification** with respect to the
Mortgage Loans in the form annexed hereto as

Exhibit H-1, with any applicable exceptions noted thereon. If, in the course of such review, the Trustee finds any document constituting a part of a Mortgage File which does not meet the requirements of Section 2.01"

13.    In the Appellant case nothing was done and note was not even endorsed, transferred and delivered to the Trustee, "Bank of New York" in the Plaintiff case. Please refer to "PSA" dated 02/01/2007 filed as EXHIBIT-99.1 with the SEC as per file # <u>333-110343</u>, <u>333-131630-85</u>, Accession # 905148-7-2378, filed on 03/16/2007 at 2:18 PM ET ( **available at <u>www.sec.gov</u> )**

14.    The Appellant loan was sold in the illegal securitization as unregistered and un-regulated security by the securitization partners as under;

America's Wholesale Lender nominal lender on Deed of Trust and note sold for cash to→Countrywide Home loan Inc (seller & Sponsor) sold for cash to→CWALT Inc (Depositor) sold for cash as certificate and bond to→ Countrywide Securities sold for cash to→ Securities Underwriter sold for cash to → Dealers sold for cash to→ Agents sold for cash to→ Investors ( The Defendants et al Appellee admitted in 424(b)5 Prospectus Supplement dated 11/14/2006, filed with the SEC as per file # <u>333-131630</u>, <u>-85</u> , Accession # 1144204-7-10851, filed on 03/01/2007 at 5:21PM ET. **(Available at <u>www.sec.gov</u>) Please see EXHIBIT-D**

15.    The appellant note should have at least eight (08) endorsements, but there were no endorsements, no assignment of transfer recorded in the Loudoun County Lands Record, and thus chain of transfer was not perfected, the note was not endorsed, transferred and delivered to the Trustee "Bank of New York" in this case

16.    New York Trust Law because section 11.04 of the trust agreement, which is called a Pooling and Servicing Agreement ("PSA") and under which, Bank of New York, purports to be Trustee of CWALT Inc Alternative Loan Trust 2007-5CB, provides in applicable part that the Trust Agreement "shall be governed by and controlled in accordance with the laws of State of New York..."

   a) Unless an asset is transferred into lifetime trust, the asset does not become trust property. (New York Estates, Powers and Trusts Law § 7-1.18)
   b) The assignment of mortgage without transfer of the underlying Promissory Note is a nullity. ( Merritt v. Bartholick, 36 N. Y 44 (1867); Kluge v. Fugazy, 145 A.D. 2d 537 (1988)
   c) A Trustee's  (Bank of New York, in this case) act that is contrary to the trust agreement is "VOID"  (New York Estates, Powers and Trusts Law § 7-2.4)
   d) Additionally, Pooling and Servicing Agreement "PSA" constitutes a warranty by the Depositors (CWALT Inc, in the present case) that at the time the depositors sold the assets, the depositors were the owner of the assets. The industry standard, custom and practice would have required under the terms of this "PSA" which these parties chose that at the very least the promissory notes which  constituted the assets of this loan trust be endorsed through the chain of ownership to the depositors by the closing date of  02/27/2007. After the closing date the loan cannot be transferred to the Trust as it will become a violation of "REMIC"

e) In fact Article VIII, of this "PSA" set forth further explicit restrictions on the powers of the trustee and the Master Servicer and prohibits either of them from acquiring any assets beyond the closing date of the trust,(which is 02/27/2007 in the present case) without the proper opinion of the counsel that this acquisition would not violate the "REMIC" provisions of the tax code. These types of limitations are common and are present in this or a similar form in every "PSA" which seek to create a securitized trust that can claim the tax benefits of "REMIC" status under the US Tax Code

f) Based upon the information provided in the securitizations documents filed with the SEC by these Defendants, the allegation that trust (Bank of New York) obtained this promissory note would violate the "REMIC" provisions of IRS tax code for a number of reasons;

   i) First, as per the statements of the Defendants the loan was in default, therefore the loan could not have been a "qualified mortgage loan" under the IRS code because the qualified mortgage loan is a performing loan.

   ii) Second the alleged transfer to the trust was after the closing date , and after the certificates were issued, in effect, the Defendant Bank of New York is claiming to have transferred an asset to a trust that by its own terms been closed for more than 04 years at the time the alleged transfer took place.

   iii) Third, the promissory note was not endorsed to the trust by the depositors (CWALT Inc) and is devoid of the required chain of endorsements to establish a true sale under the applicable portions of the IRS tax code

   iv) The claim of Defendant Bank of New York, RECONTRUST Co. and ALG Trustee that the transfer occurred in this manner is an extreme deviation from the industry standards and practices as well as the terms of "PSA" governing this transaction. This is false and was done intentionally by the Defendants et al just to mislead[9] the court. (Fraud upon court and on Plaintiffs)

---

[9] "The mortgage and banking industry is so corrupt, and has specifically, strategically and systematically been put into place by laws that keep the individual from having any control over the powers that be." "The legalities of them being able to foreclose are totally tainted," "The courts look at banks as being those who render the truth and get the benefit of the doubt."

v) If at any point the required legal steps are not followed to the letter, then the ownership of the mortgage loan could fall into question.

vi) The documentation problems prove to be pervasive and, more importantly, throw into doubt the ownership of not only foreclosed properties but also pooled mortgages, the consequences could be severe.

vii) Multiple banks may attempt to foreclose upon the same property. Borrowers who have already suffered foreclosure may seek to regain title to their homes and force any new owners to move out.

viii) Thus, the only party that may enforce the rights associated with the mortgage, with standing to take action on a mortgage in a court, must be legally able to act on the mortgage.

ix) Accordingly, standing is critical for a successful foreclosure, because if the party bringing the foreclosure does not have standing to enforce the rights attached to the mortgage and the note, that party may not be able to take the property with clear title that can be passed on to another buyer.

x) This is a fraud on the face of these documents by the Defendant et al. Defendants et al are misleading the court, committing fraud upon court and on Appellant.

xi) In addition to the reasons set forth in paragraphs above, that casts serious doubts upon the assertions that this, Defendant Bank of New York owns this loan are the representations and warranties set forth in "PSA" and Assignment and Assumptions Agreement that the loans sold to Defendant Bank of New York according to the terms of the "PSA" were owned by at least 08 and may be more, other parties prior to the conveyance to this Defendant Bank of New York.

xii) America's Wholesale Lender nominal lender on Deed of

Trust and note sold for cash to→Countrywide Home loan

Inc (seller & Sponsor) sold for cash to→CWALT Inc

(Depositor) sold for cash as certificate and bond to→

12

Countrywide Securities sold for cash to→ Securities

Underwriter sold for cash to → Dealers sold for cash to→

Agents sold for cash to→ Investors ( The Defendants et al

Appellee admitted in 424(b)5 Prospectus Supplement

dated 11/14/2006, filed with the SEC as per file # <u>333-</u>

<u>131630, -85</u> , Accession # 1144204-7-10851, filed on

03/01/2007 at 5:21PM ET. (Available at <u>www.sec.gov</u>)

Please see EXHIBIT-D

xiii)    Those parties are not present on Appellant promissory

note as would be expected under the industry standards if

they ever had any ownership interest in the promissory

note. (And those parties are not known to Appellant or to

the court, because these were kept undisclosed which a

violation of TILA is).

xiv)    Appellant reviewed the Defendant MERS procedures

Manual which is available for download  at;

**at <u>http://www.mersinc.org/MersProducts/manuals.aspx?mpid=</u>**

xv) The mortgage assignments dated 07/30/2009, after more than

02 years in violation of "PSA" , "REMIC" also violate the

Defendant MERS own written procedures found at page "66" of

the MERS Procedures Manual which states that ," MERS cannot

transfer beneficial rights to the debt. The debt can only be

transferred by properly endorsing the promissory note to the

13

transferee." The "PSA" says that all assignments must be completed by closing date (02/27/2007) and no mortgage can be added in the trust after this period. It is not understood why Defendants et al are falsifying, hiding true facts from the court and committing fraud upon court.

xvi)    A proper negotiation to Defendant Bank of New York would require a specific negotiation to Defendant Bank of New York in conformity with the time frames set forth in the "PSA"

xvii)    In order to protect ownership interests, fully executed, original (commonly referred to as "wet ink") documents must be recorded in a grantor/grantee index at a county recording office. In the case of a purchaser or transferee, a properly recorded deed describing both the property and the parties to the transfer establishes property ownership.

xviii)    Both the note and the mortgage need to be properly transferred. Without the note, a mortgage is unenforceable, while without the mortgage, a note is simply an unsecured debt obligation, no different from credit card debt[10] to be transferred properly, both the loan and accompanying documentation must be transferred to the purchaser, and the transfer must be recorded. PSAs appear to require a complete chain of

---

[10] Pepperdine Law Review, Vol. 37, at 758-759 (2010)

endorsements on the notes from originator up to the depositor,
with a final endorsement in blank to the trust

xix)    A complete chain[11] of endorsement, rather than a single
endorsement in blank with the notes transferred thereafter as
bearer paper, is important for establishing the "bankruptcy
remoteness[12]" of the trust assets.

xx) PSAs are governed by New York law and create trusts governed
by New York law. New York trust law requires strict compliance
with the trust documents; any transaction by the trust that is in
contravention of the trust documents is void, meaning that the
transfer cannot actually take place as a matter of law. Therefore,
if the transfer for the notes and mortgages did not comply with
the PSA, the transfer would be void, and the assets would not
have been transferred to the trust.  Moreover, in many cases just
like the Plaintiff's case, the assets could not now be transferred
to the trust.

xxi)    PSAs generally require that the loans transferred to the trust
not be in default, which would prevent the transfer of any non-

---

[11] Without a complete chain of endorsements, it is difficult, if not impossible, to establish that
the loans were in fact transferred from originator to sponsor to depositor to trust, rather than
directly from originator or sponsor to the trust. The questions about what the transfers
required, therefore, involve both the question as to whether the required transfers actually
happened, as well as whether, if they happened, they were legally sufficient.

[12] A critical part of securitization is to establish that the trust's assets are bankruptcy remote, meaning that they could
not be claimed by the bankruptcy estate of an upstream transferor of the assets.

performing loans to the trust now

g) PSAs frequently have timeliness requirements[13] regarding the transfer in order to ensure that the trusts qualify for favored tax treatment.

h) If so, the effect could be that rights were not properly transferred during the securitization process such that title to the mortgage and the note might rest with another party in the process other than the trust.

i) Defendant Bank of New York does not own the Appellant's mortgage and Note based upon the evidence provided by the RECON TRUST Co. and ALG Trustee, who are acting as a vehicle in this scheme. Further because of the strict requirements of this pooling and servicing agreement , the Defendant Bank of New York could not become the owner of the Appellant's promissory note and the Deed of Trust as claimed by the Defendant Bank of New York et al, without running afoul of the express terms of the "PSA"

17.     In foreclosure cases across the nation, the banks have been filing "lost note affidavits", certifying that they cannot find the notes that are required to prove that they have the right to foreclose.  In some cases, the notes are later "found," and in other cases the notes are

---

[13] 90 day after the cutoff date

"manufactured" by <u>robo-signers</u>, as the assignment of Substitute Trustee [14]and Assignment of deed of Trust was executed by the Robo-Signers.

18.    The true identity of the "LENDER" is in the sole care, custody and control of the loan servicer, or other intermediary conduit in the securitization chain including the trustee or depositor for the special purpose vehicle ("SPV") that re-issued the homeowner's note and encumbrance as a Derivative Hybrid Debt Instrument ("BOND") and equity instrument, ownership of percentage share of pool assets, of which the subject loan was one such asset.

19.    The note signed by the borrowers and the mortgage-backed bond accepted by the investor who purchased the security are both evidence of an obligation. The DOT is intended to be incident to the note and possibly incident to the "BOND," <u>if the chain of title was perfected</u>, which is not done in the present case.

   a.    The Payee on the note and the payee on the bond are different parties.

   b.    The bonds were issued with three principal indentures: (1) repayment of principal non-recourse bonds based upon the payments by obligors under the terms of notes and mortgages in the pool; (2) Payment of interest under the same conditions, and (3) the conveyance of a percentage ownership in the pool of loans,

---

[14] In Appellant's case fabricated document signed by the "ROBO-SIGNERS" were used

which means that collectively 100% of the investors own 100% of

the entire pool of loans, and the Trust never owned these.

## **FACTS**

20.     On 04/01/2011 Appellant received the letter to intent to foreclose

from the "RECONTRUST[15] COMPANY N.A" and ALG Trustees to foreclose

the Appellant's primary residence, when Appellant was not in default and

have sent all the mortgage payments to Bank of America, who failed to

account the Appellant's payment properly in violation of "GAAP"

21.     Defendant does not have any standing to proceed with foreclosure

and want to steal the Appellant's primary residence.

22.     Appellant file the notice of appeal on 01/28/2011, followed by the

Appellant's opening brief on 02/28/2011. Please see **EXHIBIT-E and**

**EXHIBIT-F** (docket # 1 dated 02/02/2011 & Docket# 7 dated

02/28/2011)

23.     Appellee Defendants did not even file the reply brief as required by

the Informal Brief Order, entered as Docket # 2 dated 02/02/2011, and

---

[15]"RECONTRUST" is breaking the law by foreclosing on homeowners in Virginia because it
doesn't meet state requirements. RECONTRUST" Co., a subsidiary of Bank of America, the
biggest U.S. lender by assets, isn't a member of the state bar or a title insurance
company and is unqualified to carry out trustee foreclosures, "RECONTRUST" CO. N.A. is
a non-depository national bank (actually it is not a bank they are misleading) initiating home
foreclosures in violation of Virginia law.(must abide by state law) **Please See, COX v.**
**RECONTRUST CO., 10-04117, U.S. Court of Appeals for the 10th Circuit**
**(Denver) &**
UTAH CLASS ACTION: COLEMAN v. BofA, RECONTRUST CO., MERS, Wells Fargo, HSBC, US
Bank, Key bank, BNY Mellon - 2010-11-05 19:01:35-04
IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH, CENTRAL DIVISION
JEREMY COLEMAN, DWAYNE WATSON, SAMUEL ADAMSON, ETHNA LYNCH, Plaintiffs,
vs. RECON TRUST COMPANY N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., BANK OF [...]

18

now chose to foreclose on Appellant's primary residence, when they lack

standing.

24.    Defendants Appellee do not have any standing[16] to proceed as the

note was not transferred as per Section 2.01 of the "PSA" and Defendants

---

[16] **American Brokers Conduit v. ZAMALLOA** - Judge SCHACK 11Sep2007, **Countrywide Home Loans, Inc. v Taylor** - Mayer, J., Supreme Court, Suffolk County / Sept. 2007, **American Brokers Conduit v. ZAMALLOA** - Judge SCHACK 28Jan2008, **Aurora Loan Services v. MACPHERSON** - Judge FARNETI 11Mar2008, **Bank of New York v. SINGH** - Judge KURTZ 14Dec2007, **Bank of New York v. TORRES** - Judge COSTELLO 11Mar2008, **Bank of New York v. OROSCO** - Judge SCHACK 19Nov2007, **CitiMortgage Inc. v. BROWN** - Judge FARNETI 13Mar2008, **Countrywide Mortgage v. BERLIUK** - Judge COSTELLO 13Mar2008, **Deutsche Bank v. Barnes**-Judgment Entry, **Deutsche Bank v. Barnes**-Withdrawal of Objections and Motion to Dismiss, **Deutsche Bank v. ALEMANY** Judge COSTELLO 07Jan2008, **Deutsche Bank v. Benjamin CRUZ** – Judge KURTZ 21May2008, **Deutsche Bank v. Yobanna CRUZ** - Judge KURTZ 21May2008, **Deutsche Bank v. CABAROY** - Judge COSTELLO 02Apr2008, T**he Bank v. CASTELLANOS /** 2007NYSlipOp50978U/ - Judge SCHACK 11May2007, T**HE Bank v. CASTELLANOS/** 2008NYSlipOp50033U/ - Judge SCHACK 14Jan2008, **HSBC v. Valentin** - Judge SCHACK calls them liars and dismisses WITH prejudice **, **Deutsche Bank v. CLOUDEN /** 2007NYSlipOp51767U/ Judge SCHACK 18Sep2007, **Deutsche Bank v. EZAGUI** - Judge SCHACK 21Dec2007, **Deutsche Bank v. GRANT** - Judge SCHACK 25Apr2008, **Deutsche Bank v. HARRIS** - Judge SCHACK 05Feb2008, **Deutsche Bank v. Lacrosse, Cede, DTC Complaint**, **Deutsche Bank v. NICHOLLS** - Judge KURTZ 21May2008, **Deutsche Bank v. RYAN** - Judge KURTZ 29Jan2008, **Deutsche Bank v. SAMPSON** - Judge KURTZ 16Jan2008, **Deutsche v. Marche** - Order to Show Cause to VACATE Judgment of Foreclosure - 11June2009, **GMAC Mortgage LLC v. MATTHEWS** - Judge KURTZ 10Jan2008, **GMAC Mortgage LLC v. SERAFINE** - Judge COSTELLO 08Jan2008, **HSBC Bank USA NA v. CIPRIANI** Judge COSTELLO 08Jan2008, **HSBC Bank USA NA v. JACK** - Judge COSTELLO 02Apr2008, **IndyMac Bank FSB v. RODNEY-ROSS** - Judge KURTZ 15Jan2008, **LaSalle Bank NA v. CHARLEUS** - Judge KURTZ 03Jan2008, **LaSalle Bank NA v. SMALLS** - Judge KURTZ 03Jan2008, **PHH Mortgage Corp v. BARBER** - Judge KURTZ 15Jan2008, **Property Asset Management v. HUAYTA** 05Dec2007, **Rivera, In Re Services LLC v. SATTAR /** 2007NYSlipOp51895U/ - Judge SCHACK 09Oct2007, **U.S. Bank NA v. AUGUSTE** - Judge KURTZ 27Nov2007, **U.S. Bank NA v. GRANT** - Judge KURTZ 14Dec2007, **U.S. Bank NA v. ROUNDTREE** - Judge BURKE 11Oct2007, **U.S. Bank NA v. VILLARUEL** - Judge KURTZ 01Feb2008, **Wells Fargo Bank NA v. HAMPTON** - Judge KURTZ 03Jan2008, **Wells Fargo, Litton Loan v. Farmer** WITH PREJUDICE Judge Schack June2008, **Wells Fargo v. Reyes** WITH PREJUDICE, Fraud on Court & Sanctions Judge Schack June2008 , **Deutsche Bank v. Peabody** Judge Nolan (Regulation Z)**Indymac Bank, FSB v. Boyd** - Schack J. January 2009, **Indymac Bank, FSB v. Bethley** – Schack, J. February 2009 ( The tale of many hats), **Indymac Bank, v. Yano-Horoski** –Judge Blasts Bank's Foreclosure Conduct and Cancels Mortgage. **LaSalle Bank Natl. Assn. v Ahearn** - Appellate Division, Third Department (*Pro Se*)\, **NEW JERSEY** COURT DISMISSES FORECLOSURE FILED BY **DEUTSCHE BANK** FOR FAILURE TO  PROVIDE DISCOVERY AS TO OWNER AND HOLDER OF NOTE, SECURITIZED TRUST DOCUMENTS,  AND OTHER DOCUMENTS DEMANDED BY BORROWERS, **HSBC Bank USA v Miller** 2009 NY Slip Op 29444 / Decided on October 29, 2009 / Meddaugh, J.**Lasalle Bank v. Smith, MERS  (Judge Schack - March 22, 2010)**

et al  simply have no answer for violating the state statutes and they

don't want to incur the wrath of Judge Shumate because of the serious

ramifications his finding could have on lenders in Utah and across the

nation where Bank of America and other financial institutions, under the

guise of a mortgage lender have trampled the rights of citizens

25.    Appellant claims that neither the lender, nor MERS*, nor Bank of

America, nor Bank of New York[17], nor any other Defendant, has any

remaining interest in the mortgage Promissory Note. The note has been

bundled with other notes and sold as mortgage-backed securities or

otherwise assigned and split from the Deed of Trust[18]. When the note is

split from the trust deed, "the note becomes, as a practical matter,

unsecured." Restatement (Third) of Property (Mortgages) § 5.4 cmt at

---

**Wells Fargo Bank, Americas Servicing Company, MERS v Hunte** **(Judge Schack, Apr.14, 2010/ Dismissed with prejudice, possible sanctions.)** (The court "discovered that WELLS FARGO executed a satisfaction of the instant mortgage more than ten months ago." "The Court is gravely concerned that: it expended scarce resources on an action that should have been discontinued." "the Court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct."
**Chase v. Johnson** (Judge Schack May 4, 2010) (vacated judgment of foreclosure and sale with prejudice as plaintiff lacked standing.

[17] Trusts has been dissolved after the major trigger event, AIG Bailout when the toxic assets were sold to Maiden Lane-I,II and Maiden Lane –III, controlled by the Federal Reserve and US Treasury.
[18] A party cannot foreclose on a mortgage without having title, giving it standing to bring the action. (*See Kluge v. Fugazy*, 145 AD2d 537, 538 (2nd Dept 1988 ), holding that a "foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity". *Katz v. East-Ville Realty Co.*, 249 AD2d 243 (1st Dept 1998), holding that "[p]plaintiff's attempt to foreclose upon a
mortgage in which he had no legal or equitable interest was without foundation in law or fact"
and   Non-judicial sale is NOT an available election for a securitized loan

(1997). A person or entity only holding the Deed of Trust suffers no default because only the Note holder is entitled to payment. Basically, "[t]he security is worthless in the hands of anyone except a person who has the right to enforce the obligation; it cannot be foreclosed or otherwise enforced." Real Estate Finance Law (Fourth) § 5.27 (2002).

26.     Appellant disputed this debt as Appellant was not in default, defendant Appellee failed to validate the Debt and are acting ultra-virus.

27.     Appellee Defendants have fabricated the, assignments from MERS signed by the Ms. Julie Webb, a robo-signer and not an employee of the Defendant MERS[19], but signs as the Assistant Secretary of the MERS[20]. The signatures of Ms. Julie Webb were not identical and various courts have taken serious view of her signing and wearing of different hats for financial and non-financial institutions. [App-9 Docket # 10 dated 09/08/2010, EX-E & F(already filed with the original complaint in state court as Ex-C&D ]

28.     The original nominal lender "America's Wholesale Lender" is still there in the Loudoun County Lands Record and Chain of Transfer was not perfected.

29.     The appointment of substitute Trustee was illegal. Defendant MERS[21] does not have any authority to appoint the substitute Trustee. Defendants failed to

---

[19] MERS was named as beneficiary on the Deed of Trust when MERS was not creditor and there was no name of MERS on the promissory note. MERS cannot be beneficiary when it is not a creditor, this separates the Deed of Trust and note, making Deed of Trust "VOID" and Note "UNSECURED"

[20] MERS does not have any authority to appoint substitute Trustee only lender can appoint. MERS is not creditor and lender. Please see item # 24 of the Deed of Trust.

[21] In *Carpenter v. Longan*, the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan*, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed 313 (1872) Assigning the mortgage instrument was invalid as it held no beneficial interest in the mortgage instrument for two reasons: 1) a security instrument, apart from the promissory note giving rise to the debt has no value because there is no debt by which it secures payment; and 2) MERS had no beneficial interest in the mortgage instrument that it could assign. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." *Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.3d 619, 623 (Mo. App. 2009)

appoint substitute Trustee as per para 24 of the Deed of Trust, which states that only Lender has the power to appoint the substitute trustee and not the Defendant MERS[22], when it was not even a creditor.

**WHEREFORE**, Appellant request this Honorable court to issue injunction till the outcome of the appeal and Appellant is willing to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.

**WHEREFORE;**

a. Plaintiff seeks an injunction prohibiting the Defendants from any action which would result in Appellant being ousted from the disputed Property.

b. By virtue of the foregoing, Defendants are not "holders" of the disputed Promissory note and therefore are not entitled to enforce the same, and by further virtue that Bank of New York is not the

---

[22] Courts around the country started to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based. In *Landmark National Bank v. Kesler*, the Kansas Supreme Court extensively analyzed the position of MERS in relation to the, that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan. *Landmark National Bank v. Kesler*, 216 P.3D 158 (Kansas, 2009)
In *LaSalle Bank NA v. Lamy*, the court denied a foreclosure action by an assignee of MERS on the grounds that MERS itself had no ownership interest in the underlying note and mortgage. *LaSalle Bank NA v. Lamy*, 824 N.Y.S.2d 769 (N.Y. Supp. 2006)
In the case *In re Mitchell*, **the court found that MERS has no ownership interest in the promissory note.** The court found that though MERS attempts to make it appear as though it is a beneficiary of the mortgage, **it in fact is not a beneficiary**. The Court stated "But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. *In re Mitchell*, Case No. BK-S-07-16226-LBR (Bankr.Nev., 2009),

"Lender," "Beneficiary," nor party entitled to enforce the terms of the pertinent Deed of Trust, no Defendants, nor anyone acting on their behalves, has or had a right to issue a notice of default, accelerate the balance due under the pertinent note and/or foreclose and/or commence and/or attempt to foreclose on the disputed property.

c. Appellant is threatened with immediate, irreparable harm if any of the Defendants are permitted to continue to lay claim to Appellant's property and commence any action to deprive Plaintiffs of title or possession of the property.

d. If Defendants are not stopped from commencing and/or pursuing any action to further their unlawful claims to an interest in the property, Appellant could and would thereby lose his home, a loss Appellant should not be permitted to suffer.

e. Even if any of the Defendants can, at some point, prove that they are acting under claim of right and with rightful authority, any injuries each might suffer by the court granting a restraining order and preliminary injunction against them would be substantially less harmful than those which Appellant would suffer by the loss of his home. Accordingly, Appellant is entitled to a restraining order and preliminary and permanent injunction against all Defendants in this case, prohibiting them from issuing a notice of default, accelerating the balance due under the pertinent note and/or foreclosing and/or commencing and/or attempting to foreclose.

    f.  By the actions above and allegations set forth herein, Appellant has a

       strong likelihood of prevailing on the merits of this case. Appellant

       request that this Court grant a  restraining order and preliminary and

       permanent injunction precluding Defendants from engaging in the

       wrongful conduct identified herein in the future, till the outcome of

       this appeal.

Respectfully submitted please

*Asad S. Niyaz*

Asad Sammi Niyaz

20278 Glenrobin Terr, Ashburn VA 20147

Dated April 02, 2011

## NOTARY'S VERIFICATION

County: *Loudoun*

State: *Virginia*

On this *2nd* day of *April* 2011 personally came before me the above
named Affiant, who proved his identity to me to my satisfaction, and
acknowledged his signature on this affidavit in my presence and stated that he
did so with full understanding.

Executed on this *2nd* day of *April*, 2011 at *Broadlands,* Virginia

My Commission Expires on *10/31/2013*

Notary Public, State of Virginia _____

## CERTIFICATE OF SERVICE

I, Appellant Asad Sammi Niyaz hereby certify that a true and copy of the above motion
for stay/Injunction relief was sent via USPS first class postage paid to the following:

1. Bank of America, PO Box 5170 Simi Valley CA93062-5170  C/O Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC 20005
2. Country wide Home Loans, Inc, America's Wholesale Lender 4500 Park Granda MSN# SVB-314 Calabasas CA 91302-1613 C/O Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC 20005
3. BAC Home Loans Servicing LPPO Box 650070 Dallas, TX 75265-0070, C/O Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC 20005
4. Reconstruct Company, NA, is a wholly-owned subsidiary of Bank of America, N.A 2380 Performance Drive, Richardson, TX 75082, Mail Stop: RGV-C4-450 C/O Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC 20005
5. MERS, Mortgage Electronic Registration System (MERS) 1818 Library Street, Suite 300 Reston, VA 20190 C/O Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC 20005
6. Bank of New York , C/O Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC20005
7. Samuel I. White, PC, 5040 Corporate Woods Drive Suite 120 Virginia Beach VA 23462-6523.
8. ALG Trustee, LLC 803 Sycolin Road Suite 301 Leesburg VA 20175

Asad Sammi Niyaz  _Asad S. Niyaz_ Dated  _04/02/11_

## NOTARY'S VERIFICATION

County: _Loudoun_

State: _Virginia_

On this _2nd_ day of _April_ 2011 personally came before me the above named Affiant, who proved his identity to me to my satisfaction, and acknowledged his signature on this affidavit in my presence and stated that he did so with full understanding. Executed on this _2nd_ day of _April_, 2011 at _Broad lands_ Virginia

My Commission Expires on _10/31/2013_

Notary Public, State of Virginia

# RECONTRUST COMPANY, N.A. and ALG Trustee, LLC

2380 Performance Drive, TX2-985-07-03          803 Sycolin Road, Suite 301
Richardson, TX 75082                          Leesburg, VA 20175

TELEPHONE: (800) 281-8219
FACSIMILE: (972) 498-5829

March 30, 2011
**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

20278 GLENROBIN TER
ASHBURN, VA 20147-2371

**Re:**    Original Promissory Note Unavailable
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-5CB, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-5CB

TS No. 11 -0016391

Dear: IMAM MEHBOOB: IMAM MEHBOOB, SAMEE NIAZ and SAMEE NIAZ

You have defaulted in the terms of the Deed of Trust dated January 26, 2007, that secures your loan. THE BANK
OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-5CB, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2007-5CB has requested RECONTRUST COMPANY, N.A. and ALG
Trustee, LLC, as Substitute Trustees, to forward this letter to you, on its behalf, in accordance with Section 55-
59.1B., Code of Virginia, 1950, as amended, as notice that the original Note evidencing your indebtedness for your
loan is unavailable because it has been lost, misplaced, or destroyed.

As a result of your default, all sums secured by said Deed of Trust have been accelerated, and upon the expiration of
fourteen (14) days from the date of mailing of this notice, THE BANK OF NEW YORK MELLON FKA THE
BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-5CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-
5CB will request that RECONTRUST COMPANY, N.A. and ALG Trustee, LLC schedule the sale of the property
secured by said Deed of Trust. RECONTRUST COMPANY, N.A. and ALG Trustee, LLC mailing address is shown
above.

Notice is further given that if you believe you may be subject to a claim by another person or entity other than THE
BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-5CB, MORTGAGE
THROUGH CERTIFICATES, SERIES 2007-5CB to enforce the instrument of indebtedness, you may petition the
Circuit Court of LOUDOUN, Virginia for an order requiring the beneficiary to provide adequate protection against
any such claims.

Very truly yours,


RECONTRUST COMPANY, N.A. and ALG Trustee, LLC

**NOTICE**

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, WE ADVISE YOU THAT WE ARE A DEBT COLLECTOR
ATTEMPTING TO COLLECT THE INDEBTEDNESS REFERRED TO HEREIN AND ANY INFORMATION WE OBTAIN FROM YOU
WILL BE USED FOR THAT PURPOSE.

Prepared by: YOLANDA SMITH

LOAN #: 157052892

# INTEREST ONLY FIXED RATE NOTE

JANUARY 26, 2007                                                    VIRGINIA
[Date]                              [City]                          [State]

20278 GLENROBIN TER, ASHBURN, VA 20147-2371
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 335,200.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.625 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
**(A) Time and Place of Payments**
I will make a payment every month. This payment will be for interest only for the first 120      months, and then will consist of principal and interest.
I will make my monthly payment on the FIRST      day of each month beginning on
MARCH 01, 2007      . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on
FEBRUARY 01, 2037      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 1,850.58      for the first 120      months of this Note, and thereafter will be in the amount of U.S. $ 2,523.89      . The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

● VIRGINIA INTEREST ONLY FIXED RATE NOTE
2D777-VA (07/05)(d)                          Page 1 of 3                          Initials: _____





LOAN #: 157052892

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 %    of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

LOAN #: 157052892

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Mehboob Imam by S.Hussain his attorney in fact* _____(Seal)
IMAM, MEHBOOB                                         -Borrower

_____(Seal)
                                      -Borrower

_____(Seal)
                                      -Borrower

_____(Seal)
                                      -Borrower

*[Sign Original Only]*



After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
YOLANDA SMITH
AMERICA'S WHOLESALE LENDER


6230 OLD DOBBIN LANE SUITE
140
COLUMBIA
MD 21045

RPC/Tax Map Reference #/Parcel I.D. #:

————————— [Space Above This Line For Recording Data] —————————

061077DCM                          00015705289201007
(Escrow/Closing #)                 [Doc ID #]

## DEED OF TRUST
MIN 1000157-0007707930-5



The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by
IMAM,MEHBOOB , MARRIED *and SAMEE NIAZ*


as Borrower (trustor), to
SAMUEL I WHITE
130 BUSINESS PARK DRIVE, VIRGINIA, VA 23462
N/A
N/A
as Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.



Section: ____1____  Block: __7__  Lot: __15__  Unit: _____

• MERS CONV/VA Deed of Trust-VA
2006A-VA (12/06)(d/i)          Page 1 of 12          FNMA/FHLMC Form 3047 1/01





*24(signmi) Dm/Sm*

DOC ID #: 00015705289201007

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   JANUARY 26, 2007   , together with all Riders to this document.

**(B) "Borrower"** is
IMAM,MEHBOOB, AND SAMEE NIAZ

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of  NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

**(D) "Trustee"** is
SAMUEL I WHITE
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is
130 BUSINESS PARK DRIVE, VIRGINIA, VA 23462

**"Trustee"** is
N/A
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is
N/A

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated  JANUARY 26, 2007   . The Note states that Borrower owes Lender
THREE HUNDRED THIRTY FIVE THOUSAND TWO HUNDRED and 00/100

Dollars (U.S. $ 335,200.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  FEBRUARY 01, 2037   . The interest rate stated in the Note is SIX & FIVE-EIGHTHS         percent (    6.625 %). If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | 0 |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

DOC ID #: 0001570528920100?

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                              of                    LOUDOUN                    :
[Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
20278 GLENROBIN TER, ASHBURN
[Street/City/County]

Virginia 20147-2371 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to

♦ MERS CONV/VA Deed of Trust-VA
2006A-VA (12/06)                          Page 3 of 12                          FNMA/FHLMC Form 3047 1/01

DOC ID #: 00015705289201007

**Section 3. Payments** due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow

DOC ID #: 0001570528920100 7

account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold

DOC ID #: 0001570528920107

such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

DOC ID #: 0001570528920100?

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction,

DOC ID #: 00015705289201007

or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

DOC ID #: 00015705289201007

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to

DOC ID #: 00015705289201007

which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee

DOC ID #: 0001570528920107

may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
IMAM, MEHBOOB                                      -Borrower

_____ (Seal)
SAMEE NIAZ                                         -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

DOC ID #: 00015705289201007

STATE OF VIRGINIA, _____ FAIRFAX _____

County, _____ ANNANDALE _____ (city or town), ss:

The foregoing instrument was acknowledged before me this _26th day of January 2007_ by
_MEHBOOB RIASM and SAMEE RIAZ_

My Commission Expires: _____

_____
Notary Public

DENNIS MARTIN
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES OCTOBER 31, 2009

Prepared by: YOLANDA SMITH

## AMERICA'S WHOLESALE LENDER

Branch #: 0009185
6230 OLD DOBBIN LANE SUITE 140
COLUMBIA, MD 21045
Phone: (866)518-5670
Br Fax No.: (877)805-8671

DATE:          01/26/2007
CASE #:
DOC ID #:      00015705289201007
BORROWER:      IMAM MEHBOOB
PROPERTY ADDRESS: 20278 GLENROBIN TER
                  ASHBURN, VA 20147-2371

### LEGAL DESCRIPTION EXHIBIT A

All that certain lot or parcel of land situate in the County of Loudoun, Commonwealth of Virginia,
and being more particularly described as follows:Being known and designated as Lot 15 in Block
7, Section 1 in a subdivision known as Ridges as Ashburn as per plat thereof recorded in Plat
Book 1420 at plat 1547 among the Land Records of Loudoun County, Virginia.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)



* 2 3 9 9 1 *



* 1 5 7 0 5 2 8 8 9 2 0 0 0 0 0 2 0 0 6 A *

13

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:

Prepared By:
YOLANDA SMITH
AMERICA'S WHOLESALE LENDER


6230 OLD DOBBIN LANE SUITE
140
COLUMBIA
MD 21045

|  |  |
|---|---|
| 061077DCM | 00015705289201007 |
| [Escrow/Closing #] | [Doc ID #] |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-SIXTH    day of
JANUARY, 2007    , and is incorporated into and shall be deemed to amend and supplement
the, Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

20278 GLENROBIN TER
ASHBURN, VA 20147-2371
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-7R (0405)    CHL (06/04)(d)    Page 1 of 3    Initials: _____
VMP Mortgage Solutions, Inc. (800)521-7291    Form 3150 1/01

14

DOC ID #: 00015705289201007

other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
RIDGES AT ASHBURN

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and
(iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay,
when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods,
and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance,
then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent
that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage
provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair
following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable
to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the
sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to
Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure
that the Owners Association maintains a public liability insurance policy acceptable in form, amount,
and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential,
payable to Borrower in connection with any condemnation or other taking of all or any part of the
Property or the common areas and facilities of the PUD, or for any conveyance in lieu of
condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by
Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's
prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or
termination of the PUD, except for abandonment or termination required by law in the case of
substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent
domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the

-7R (0405)      CHL (06/04)          Page 2 of 3          Initials: _____ / _____          Form 3150 1/01

15

DOC ID #: 00015705289201007

express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Mehboob Imam by S. Niaz_
_his attorney in fact_                                 _____ (Seal)
IMAM, MEHBOOB                                                           - Borrower

_S. Niaz_
_____ (Seal)
SAMEE NIAZ                                                              - Borrower

_____ (Seal)
                                                                        - Borrower

_____ (Seal)
                                                                        - Borrower

VMP -7R (0405)        CHL (06/04)            Page 3 of 3            Form 3150  1/01

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                              )    Bankruptcy No. 08-18700
                                    )
JOHN T. KEMP,                       )
                                    )
            Debtor.                 )
                                    )
------------------------------------)
                                    )
JOHN T. KEMP,                       )    Adversary No. 08-02448
                                    )
            Plaintiff,              )
                                    )
      vs.                           )
                                    )    Camden, NJ
COUNTRYWIDE HOME LOANS,             )    September 24, 2009
                                    )    10:04 a.m.
            Defendant.              )


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


For the Plaintiff:        BRUCE LEVITT, ESQUIRE
                          LEVITT & SLAFKES, P.C.
                          76 South Orange Avenue
                          Suite 305
                          South Orange, NJ    07079


For the Defendant:        HAROLD KAPLAN, ESQUIRE
                          FRENKEL LAMBERT WEISS WEISMAN
                          & GORDON, LLP
                          80 Main Street, Suite 460
                          West Orange, NJ    07052


Audio Operator:           NORMA SADER

Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P.O. Box 129
                          Gibbsboro, New Jersey    08026-0129
                          Phone:    (856) 435-7172
                          Fax:      (856) 435-7124
                          E-mail:    dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                                I N D E X

2

3    <u>ARGUMENT</u>:                                    <u>PAGE NUMBER</u>

4        By Mr. Kaplan                                      4

5        By Mr. Levitt                                      11

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1              (The following was heard in open court at 10:04

 2    a.m.)

 3              THE COURT:  Please be seated.  Good morning.

 4              MR. LEVITT:  Good morning.

 5              MR. KAPLAN:  Good morning, Judge.

 6              THE COURT:  Appearances, please.

 7              MR. LEVITT:  Bruce Levitt on behalf of the

 8    plaintiff.

 9              MR. KAPLAN:  Harold Kaplan for Frenkel Lambert on

10    behalf of Countrywide.

11              THE COURT:  All right.  I have the supplemental and

12    second supplemental submissions of Countrywide and the reply.

13    Mr. Kaplan, I look to you first.  I am, frankly, appalled at

14    the confusion and lack of credibility of Countrywide's

15    response to the issue of the note -- the possession of the

16    note.

17              We started out with Ms. DeMartini's testimony that

18    the note never leaves the servicer.  She says that she saw a

19    Federal Express receipt whereby the actual note, the physical,

20    original note was transferred to the Foreclosure Department

21    internally in the same building, but that the note had not yet

22    been located.  That's where we stood at that point.

23              Then we had a submission, the supplemental

24    submission saying the original note has been found and can be

25    available for inspection.  It doesn't say where it was found,
```

1    who had possession or the like, but it was found and is

2    available for inspection.

3            And then without any explanation, there is a lost

4    note affidavit presented dated February of 2007 indicating

5    that the note cannot be found.  No explanation provided.  What

6    do I do with that, Mr. Kaplan?

7            MR. KAPLAN:  I don't know, Your Honor.  I do -- I

8    can state to the Court that I am in possession of the original

9    note and the original allonge, and it's here for inspection.

10   It was provided to me by the offices of Frenkel, Lambert, Ms.

11   Scovish.  What transpired in the -- in the interim, the

12   testimony was that it was internally moved to the Foreclosure

13   Department, I recall that.  Apparently, the Foreclosure

14   Department found it, transmitted it to counsel.  I now

15   physically have it in my possession.

16           THE COURT:  What's the lost note affidavit about?

17           MR. KAPLAN:  I did see a reference to that in

18   counsel's papers.  I was actually unaware that there was an

19   affidavit e-filed with the Court.  Apparently, it's --

20           THE COURT:  It's not an affidavit --

21           MR. KAPLAN:  -- there's some -- there is confusion,

22   because while Ms. DeMartini said she believed based upon the

23   Federal Express document that it was in the possession of the

24   Foreclosure Department, apparently, somebody thought it was

25   lost.  They were having significant difficulty finding it.

1  Ultimately, it was found.

2          THE COURT:  But that doesn't explain the 2007 lost

3  note affidavit, and --

4          MR. KAPLAN:  I understand, Your Honor.

5          THE COURT:  -- and do you have testimony to back up

6  what this is, and is the allonge signed?

7          MR. KAPLAN:  The allonge was presented to Your Honor

8  at the last hearing.

9          THE COURT:  That's the new allonge?

10          MR. KAPLAN:  That's correct.  This allonge --

11          THE COURT:  Now attached.

12          MR. KAPLAN:  -- that's correct, now attached.  Ms.

13  DeMartini testified about this allonge.

14          THE COURT:  Indeed, she did.  The allonge that was

15  prepared in connection with this litigation --

16          MR. KAPLAN:  Correct, Your Honor.

17          THE COURT:  -- and attached thereafter.  So the

18  offer of proof, without testimony, do you have somebody on the

19  phone to testify that this is the original document and that

20  -- you know, it was found?

21          MR. KAPLAN:  Ms. DeMartini is available for

22  testimony.  I hope that she has knowledge as to what

23  transpired as far as the --

24          THE COURT:  You hope.  You don't know?

25          MR. KAPLAN:  Well, I'm not -- don't specifically

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 51 of 96
Case: 11-1101    Document: 00413281063    Date Filed: 04/06/2011    Page: 26

Case 08-02448-JHW    Doc 23    Filed 01/07/10    Entered 01/07/10 16:20:05    Desc Main
Document    Page 6 of 16
Kaplan - Argument                                                          6

1    know that the Foreclosure Department sent it or she

2    specifically sent it to counsel.  Okay.  I'm sure the debtor

3    can identify his signature on this document as being the

4    original.

5              THE COURT:  Well, let's -- let's understand that if

6    we accept the proposition that the lost note affidavit is of

7    no moment, that the original document stayed in the possession

8    of Countrywide Home Loan Servicing and was not endorsed as of

9    the date that the proof of claim was filed, that is, no

10   allonge was -- no executed allonge was attached, you have

11   neither possession by the owner of the note nor endorsement by

12   the transferor, by Countrywide Home Loans, Inc., how do you

13   get over that?  How do you solve that -- those two problems?

14             MR. KAPLAN:  Your Honor, I don't know specifically

15   -- I do know -- we do know that the -- there was an allonge

16   prepared because it was needed.  I can only tell you that this

17   note, this -- the back page of the mortgage appears to have an

18   endorsement on it.  It doesn't say -- it says "pay to the

19   order of."  It's blank.  "Without recourse, Countrywide Home

20   Loans," and it's signed, and it's a rubber stamp, it says

21   "David A. Spector, Managing Director."

22             THE COURT:  What's that?

23             MR. KAPLAN:  Your Honor, I can only tell you what

24   the document says.  I don't know who Mr. Spector is.  I would

25   simply state, Your Honor, that, obviously, the intention of

Kaplan - Argument                                                    7

1    Countrywide to transfer the stock -- the ownership interest to

2    Bank of New York as Trustee, to the extent that that did not

3    happen, then I would submit that Countrywide is still the

4    holder of this paper and the party entitled to payment.

5            And while the Court may find that the proof of claim

6    is -- may be stricken because the party that allegedly filed

7    it doesn't have some type of standing, certainly, I think

8    there's still a party out there that has a right to enforce

9    the document, no --

10           THE COURT:  Well, is there a difference between

11   enforcing the obligation and enforcing it as a secured

12   obligation?  In other words, Countrywide presumably could

13   amend the proof of claim to reflect Countrywide Home Loans now

14   -- Inc. -- now operating as, whatever their new --

15           MR. KAPLAN:  Bank of America, right.

16           THE COURT:  -- Bank of America, so they would have

17   an obligation due to them, but that obligation would not

18   translate to a secured obligation, isn't that right, at least

19   for our purposes in terms of this case?

20           MR. KAPLAN:  Well, they are -- they have a security

21   interest, Your Honor.  There's a validly perfected mortgage.

22           THE COURT:  Yes, but the mortgage --

23           MR. KAPLAN:  The debtor testified he signed the

24   mortgage.

25           THE COURT:  -- is in the name -- the mortgagee is

Kaplan - Argument                                                          8

```
 1    Bank of New York as Trustee for CWA whatever.

 2              MR. KAPLAN:  Well, I -- obviously, Your Honor, there

 3    was a -- to the extent that the documents weren't transferred

 4    in the ordinary course pursuant to the Uniform Commercial

 5    Code, there is an issue.

 6              I don't -- I don't understand maybe why the document

 7    -- the mortgage effectively can't be assigned back to

 8    Countrywide.  They're still the holder of the note.  The

 9    debtor acknowledges that he signed the note and mortgage.  He

10    doesn't contest the validity of the note and the mortgage.

11              THE COURT:  So I'm to hypothesize that there could

12    be a reassignment?

13              MR. KAPLAN:  Well, I believe that the parties

14    involved need to remediate the problem so long as the Court is

15    of the mind to allow them to do that, and either Countrywide

16    needs to have the mortgage reassigned to it, because it

17    shouldn't have assigned the mortgage to Bank of New York in

18    that it didn't transfer the note in accordance with the

19    Uniform Commercial Code, and, therefore, both note and

20    mortgage need to be sent back to Countrywide so that they can

21    enforce their obligation and mortgage.

22              THE COURT:  There's been no motion to that effect,

23    no --

24              MR. KAPLAN:  I understand, Your Honor.  I'm simply

25    saying that that seems to be a way to remediate or to allow at
```

Case: 11-1101   Document: 00413281063   Date Filed: 04/06/2011   Page: 29

Kaplan - Argument          9

1    least Countrywide, if not Bank of New York, to proceed

2    accordingly.

3          THE COURT: Well, that's hypothetical, and I -- I

4    don't rule on it.

5          MR. KAPLAN: Well, I understand, Your Honor. But

6    all I'm saying is, if you're asking -- if your ruling was to

7    disallow the claim, I assume that that is -- I'm assuming, but

8    I may be wrong, a hundred percent wrong -- that that is not

9    invalidating the mortgage and the right of a party to enforce

10    that mortgage at some point, maybe not in this Court as far as

11    payment of a claim, but as far as expungement from the county

12    record that there's no longer a lien on the property, that

13    would be a complete lack of equity in the sense of unjustly

14    enriching the debtor.

15          THE COURT: Well, clearly, there's a real issue

16    about what happens down the road. I rule on what's

17    immediately in front of me.

18          MR. KAPLAN: I understand.

19          THE COURT: And that's my task. Are you aware, Mr.

20    Kaplan, that the brief that was submitted cited the wrong UCC

21    provision? By that I mean, 3-309 was cited as a basis for the

22    opportunity of Countrywide as master servicer to enforce this

23    obligation, and the New Jersey version of 3-309 is different

24    than the UCC version that was cited.

25          MR. KAPLAN: No, I'm not aware of that, Your Honor.

```
 1              THE COURT:  It's amazing how sloppy this

 2     presentation was, and I'm very disappointed about that.

 3     Anyway -- all right.  Well, thank you, Mr. Kaplan.  Do you

 4     want to present testimony?  Does it matter, you know, because

 5     there is no testimony regarding possession by Bank of New York

 6     as Trustee, correct?

 7              MR. KAPLAN:  That's correct, Your Honor.  I'm not

 8     disputing that.  That's what Ms. DeMartini testified to, that

 9     the note -- she had no record of this note leaving and going

10     across country, across wherever, to Bank of New York.

11              THE COURT:  And you do understand as well that the

12     Pooling and Servicing Agreement requires that transfer, that

13     physical transfer of the note in accordance with -- and

14     endorsement -- in accordance with UCC requirements?

15              MR. KAPLAN:  I understand that, Your Honor.  I'll

16     simply say for the sake of edification, but this is -- and I

17     was told it was all e-filed -- this is apparently the index to

18     this Master Servicing Agreement showing all the loans and it

19     does reference the Kemp loan.  It's a double-side document,

20     includes all the loans.

21              And I can say that, although Your Honor is right and

22     the UCC and the Master Servicing Agreement apparently requires

23     that, procedure seems to indicate that they don't physically

24     move documents from place to place because of the fear of loss

25     and the trouble involved and the people handling them.  They
```

1    basically execute the necessary documents and retain them as

2    long as servicing's retained.  The documents only leave when

3    servicing is released.

4              THE COURT:  They take their chances.

5              MR. KAPLAN:  I understand, Your Honor.

6              THE COURT:  Understood.  Thank you.

7              Counsel, the proof of claim was filed -- let's see

8    -- it was filed by Countrywide Home Loans, Inc., servicer for

9    Bank of New York -- now, that's wrong.  We understand that.

10   Can the -- can these problems be corrected post-petition?  In

11   other words, we know that claims can be transferred post-

12   petition.

13             What about if the note, the original note now that

14   has seemingly appeared, is now transferred to the Bank of New

15   York as Trustee and amended, it wouldn't have to -- well, it

16   would be amended to reflect that Countrywide Home Loans, Inc.,

17   is not the right party, but Countrywide Home Loans, Master

18   Servicing or servicing whatever that name is, as servicer for

19   Bank of New York, Trustee, is filing this proof of claim,

20   what's wrong with that?

21             MR. LEVITT:  Your Honor, I'm not -- first of all, we

22   have issues as far as -- as far as transfer of claim in this

23   case, any claim that would be transferred would be -- be an

24   incorrect false claim, improper claim that was filed with this

25   Court, so I don't think the transfer of the claim is going to

Appeal: 11-1101    Case: 11-1101    Document: 004132281063    Pg: 57 of 96    Date Filed: 04/06/2011    Page: 32

Case 08-02448-JHW    Doc 23    Filed 01/07/10    Entered 01/07/10 16:20:05    Desc Main
Document    Page 12 of 16
Levitte - Argument                                                    12

1  alleviate any of these issues.  The question is can a new

2  claim be filed?

3          The bar date is past.  We've got issues under

4  Section 544 of the Bankruptcy Code which will involve the

5  Standing Trustee asserting the rights of the hypothetical lien

6  creditor and the bona fide purchaser of a piece of property

7  that on the date of the filing the petition, the note was in

8  one hand, the mortgage was in the other hand.  There are a

9  whole host of issues.

10         And I don't -- I'm not -- I can't pretend to speak

11  for the Trustee, although I know what I will tell the Trustee,

12  but I don't think those are issues for the Court at this

13  point.

14         I think -- there's a record before this Court, and I

15  thank Your Honor because I was equally as dumbfounded as you,

16  and I would go further with -- and suggest fraud on the Court,

17  fraud on me, fraud on my client, because of certain statements

18  that were made that are completely contradictory to documents

19  that have been previously filed before this Court such as a

20  proof of claim attaching a note which we now find out they

21  didn't even have; a motion for summary judgment with the

22  certification --

23         THE COURT:  What do you mean they didn't have?  They

24  did have.

25         MR. KAPLAN:  They had photocopies.

1          MR. LEVITT:  But, Your Honor, they made

2    representations that they had a note.  These papers say all

3    they had was a lost note affidavit that they didn't have a

4    note.

5          THE COURT:  Well, the lost note affidavit appears to

6    have been incorrectly appended and incorrectly made out.  In

7    other words --

8          MR. LEVITT:  But it wasn't -- it wasn't appended to

9    anything, Your Honor.  I've never seen a lost note.  I'm

10   proceeding with -- and, again, I came into this case very

11   late, but I'm proceeding based upon a record and discovery and

12   Rule 26 disclosures in this case, never, ever mentioning a

13   lost note affidavit, which could have changed this entire case

14   or at least certainly would have required certain discovery.

15         THE COURT:  Well, we're actually asked to disregard

16   that lost note affidavit.

17         MR. LEVITT:  No question, but, Your Honor, I'm just

18   making a point that there's certain -- dealing with the record

19   before Your Honor, and, again, let's deal with what we have

20   now, and Your Honor has dealt with those issues.

21         What's before Your Honor now is -- is a proof of

22   claim and a request that -- for a determination from this

23   Court that this creditor, acting on behalf of the servicer,

24   because, again, there's -- there is a Pooling and Servicing

25   Agreement.  Counsel's argued that they have the right to act

1    on behalf of the mortgage holder.

2              So this Court can determine that the proof of claim

3    is disallowed.  This Court can determine based upon the record

4    before this Court that the Trustee is not a valid secured

5    creditor because it's acting through its servicer pursuant to

6    the Pooling and Servicing Agreement, make that determination

7    in this Court and then I will take it up with the Trustee as

8    to whether or not she wants me -- wants to retain me, first of

9    all -- whether or not she believes its appropriate for us to

10   file an action in this Court to actually get a Court order

11   voiding that mortgage or, quite frankly, just go to the State

12   Court and say the Bankruptcy Court's already made this

13   determination.

14             And now, it's up to you, State Court, to decide

15   whether or not you want to remove this lien against the

16   property.  That's for another day, and I'm sure we'll have

17   another set of arguments and another round of litigation.

18             But the reality is, that's the record.  And, again,

19   we can talk about what if, but up until this day, I haven't

20   seen any attempt to amend the proof of claim.  I haven't seen

21   any attempt to transfer a proof of claim.  So the record is

22   the record.  The record is crystal clear here.

23             THE COURT:  Thank you, sir.

24             I certainly agree.  I think in light of the lack of

25   precedent here in New Jersey for this kind of circumstance, it

Appeal: 11-1101   Doc: 8   Filed: 04/06/2011   Pg: 60 of 96
Case: 11-1101   Document: 004132811063   Date Filed: 04/06/2011   Page: 35

Case 08-02448-JHW   Doc 23   Filed 01/07/10   Entered 01/07/10 16:20:05   Desc Main
Document   Page 15 of 16

Colloquy                                                                15

1   behooves me to write on this, and I will do that.   There is

2   recognition of lack of possession and lack of endorsement as

3   of the time this case was filed and as of the time the proof

4   of claim was filed.   Those things are uncontested.

5         Regardless of the difficulties in proofs, the

6   machinations of where the note was and whether it was lost and

7   so forth, let's assume that it's now found but never in the

8   possession of the transferee, the Bank of New York as Trustee.

9   It doesn't look like 3-309 gives the -- at least New Jersey's

10  version -- gives the mortgagee any opportunity to overcome the

11  failure to have possession and the failure to endorse.

12        And I think that counsel is correct that -- counsel

13  for the debtor -- that it is what it is and my view should be

14  limited.

15        Having said all of that, I will review, scrutinize

16  and carefully lay out the bases of the decision.   I assume --

17  you can tell where I'm going -- I assume that's where I will

18  end up.   I don't guarantee it, but I'm -- it's fairly

19  straightforward at this point.

20        Now that I understand it and I've cleared away the

21  underbrush if you will, it seems to me that it has to be laid

22  out carefully and completely, and that's what I aim to do.   So

23  I will hold onto this, and I thank you both for your

24  presentations.

25        MR. LEVITT:   Thank you, Your Honor.

1          MR. KAPLAN:  Thank you, Your Honor.

2          (Proceedings concluded at 10:24 a.m.)

3                      * * *

4

5

6              C E R T I F I C A T I O N

7

8

9

10         I, Lois A. Vitarelli, court approved transcriber, certify

11    that the foregoing is a correct transcript from the official

12    electronic sound recording of the proceedings in the above-

13    entitled matter.

14

15

16       /s/Lois A. Vitarelli      January 5, 2010

17    LOIS A. VITARELLI

18    DIANA DOMAN TRANSCRIBING

19

20

21

22

23

24

25



FILED

United States District Court for the  Eastern District of Virginia

District of  Eastern District Alexandria Division

File Number  1:10cv796

2011 JAN 28  P 3: 20

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Asad  Niyaz
      Plaintiff- Appellant

             v.

Bank of America et al
         Defendant -Appellee

)
)
)
)

Notice of Appeal

Notice is hereby given that _____ Asad Sammi Miyaz _____(plaintiffs)
(defendants) in the above named case,* hereby appeal to the United States Court of Appeals for
the  Fourth  Circuit (from the final judgment) (from the order (describing it)) entered in this
action on the  03  day of January _____, 20 11 .

                  (s) _Asad S. Niyaz_

          Attorney for  Pro Se

          Address:  20278 Glenrobin Terr

                 Ashburn Virginia 20147

_Certificate of Service attached._

* See Rule 3(c) for permissible ways of identifying appellants.

[ PRINT FORM ]        [ RESET FORM ]

EXHIBIT to Notice of Appeal case No. 1:10cv796

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 27, 2011, a copy of this Notice of Appeal against US District Court order dated 01/03/2011 was served on to all of the Defendants through Defendant's Counsel on record, Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC 20005 via USPS first class mail postage paid.

**I HEREBY CERTIFY** that on January 27, 2011, a copy of this Notice of Appeal against US District Court order dated 01/03/2011 was served on to, Mr. Samuel I. White PC on his office address located at, 5040 Corporate Woods Drive Suite 120 Virginia Beach VA 23462-6523 via USPS, first class mail postage paid.

*Asad S. Niyaz*

Asad Sammi Niyaz
20278 Glenrobin Terr, Ashburn VA 20147
January_____, 2011

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 65 of 96    Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 1

1

Asad Sammi Niyaz
Mehboob Imam
20278 Glenrobin Terr
Ashburn VA 20147

Bank of America
PO Box 5170
Simi Valley CA93062-5170

Country wide Home Loans, Inc
 America's Wholesale Lender
4500 Park Granda MSN# SVB-314
 Calabasas CA 91302-1613

BAC Home Loans Servicing LP
PO Box 650070
Dallas, TX 75265-0070

Re: **Loan # 157052892 Asad Sammi Niyaz &Mehboob Imam**
     **Property address, 20278 Glenrobin Terr, Ashburn VA 20147**

**QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF
DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST**

   **This letter is a "qualified written request" in compliance with and
under the Real Estate Settlement Procedures Act, 12 U.S.C. Section
2605(e).**
  Reference: Account #**157052892** (hereinafter the subject loan and
is the reference for all questions and requests described below).
Dear Sir or Madam:
  We are writing to you to complain about the accounting and servicing
of this mortgage and my need for understanding and clarification of various
sale, transfer, funding source, legal and beneficial ownership, charges,
credits, debits, transactions, reversals, actions, payments, analyses and
records related to the servicing of this account from its origination to the
present date.

To date, the documents and information we have, that you have sent me, and the conversations with your service representatives have been unproductive and have not answered my questions.

Needless to say, we are very concerned. With all the news lately regarding the stories of predatory lending, you have left me feeling that there is something you are trying to hide. We worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that we are currently, or may be legally obligated to.

We hereby demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding account #**157052892**. In the event you do not supply us with the very security it will be a positive confirmation on your part that you never really created and owned one.

We also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to us as well. Absent the actual evidence of the security we have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say we owe. By debt we are referring to the principal balance you claim we owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, we need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. **Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests**.

We also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim we owe. We would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 67 of 96
Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 3

3

We understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

Increased the amounts of monthly payments;

Increased the principal balance we owe;

Increased the escrow payments;

Increased the amounts applied and attributed toward interest on this account;

Decreased the proper amounts applied and attributed toward the principal on this account; and/or

Assessed, charged and/or collected fees, expenses and miscellaneous charges we are not legally obligated to pay under this mortgage, note and/or deed of trust.

We request you insure that we have not been the victim of such predatory servicing and lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account #**157052892** by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, we need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to our questions are needed by our self and others to ensure that this loan:

1- Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;

2- That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 68 of 96
Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 4

4

3- That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4- That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5- That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6- That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof, ;

7- That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof ;

8- That interest and principal have been properly calculated and applied to this loan;

9- That any principal balance has been properly calculated, amortized and accounted for;

10-     That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, <u>certified</u>, in

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 69 of 96
Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 5

5

writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or my name.

As such, please send to us, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account #**157052892**:

1- Any certificated or uncertificated security used for the funding of this account;

2- Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3- Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4- Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5- Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6- Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 70 of 96    Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 6

6

7- Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8- Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9- Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10- Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11- Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12- Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13- Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;

Please also send me copies, front and back, of:

1- Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter;

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 71 of 96
Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 7

7

2-  Any and all document(s) establishing any Trustee of record for the
    Mortgage/Deed of Trust **and** any Note;

3-  Any and all document(s) establishing the date of any appointment of
    Trustee Mortgage/Deed of Trust **and** any Note, including any and all
    assignments or transfers or nominees of any substitute trustees(s);

4-  Any and all document(s) establishing any Grantor for this
    Mortgage/Deed of Trust **and** any Note;

5-  Any and all document(s) establishing any Grantee for this
    Mortgage/Deed of Trust **and** any Note;

6-  Any and all document(s) establishing any Beneficiary for this
    Mortgage/Deed of Trust **and** any Note;

7-  Any documentation evidencing the Mortgage/Deed of Trust is **not** a
    constructive trust or any other form of trust;

8-  All data, information, notations, text, figures and information
    contained in your mortgage servicing and accounting computer
    systems including, but not limited to Alltel or Fidelity CPI system, or
    any other similar mortgage servicing software used by you, any
    servicers, or sub-servicers of this mortgage account from the inception
    of this account to the date written above.

9-  All descriptions and legends of all Codes used in your mortgage
    servicing and accounting system so the examiners and auditors and
    experts retained to audit and review this mortgage account may
    properly conduct their work.

10-     All assignments, transfers, allonge, or other documents
    evidencing a transfer, sale or assignment of this mortgage, deed of
    trust, monetary instrument or other document that secures payment by
    us to this obligation in this account from the inception of this account
    to the present date including any such assignment on MERS.

11- All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12- All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13- The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14- All escrow analyses conducted on this account from the inception of this account until the date of this letter.

15- The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16- Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

17- All letters, statements and documents sent to us by your company.

18- All letters, statements and documents sent to us by agents, attorneys or representatives of your company.

19- All letters, statements and documents sent to us by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20-    All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21-    All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22-    All copies of property inspection reports, appraisals, BPOs and reports done on our property.

23-    All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24-    All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

25-    All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26-    All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27-    All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, we need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

In regards to Account Accounting and Servicing Systems:

1- Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2- For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3- For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that we, and others can adequately audit this account.

## In regards to Debits and Credits:

1- In a spreadsheet form or in letter form in a columnar format, please detail for us each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2- In a spreadsheet form or in letter form in a columnar format, please detail for us each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3- For each debit and credit listed, please provide us with the definition for each corresponding transaction code you utilize.

4- For each transaction code, please provide the master transaction code list used by you or previous servicers.

In regards to Mortgage and Assignments:

1- Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which our property is located from the inception of this account to the present date? Yes or No?

2- If not, why?

3- Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4- Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument we executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5- If yes, please detail for us the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument we executed securing the obligation on this account that was not recorded in the county records where our property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## In regards to Attorney Fees:

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1- Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2- If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3- Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4- If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

4- Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

5- If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

6- Please provide us with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

7- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

8- Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

9- Please detail and list for us in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

10- Please detail and list for us in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12- Please detail and list for us in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 77 of 96
Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 13

13

14-    Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

15-    Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

16-    How much total in attorney fees have been assessed to this account from the inception to the present date?

17-    How much total in attorney fees have been collected from this account from the inception to the present date?

18-    How much total in attorney fees have been charged to this account from the inception to the present date?

19-    Please send us copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

## In regards to Suspense/Unapplied Accounts:

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1-  Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2-  If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3-  In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits

and credits that has occurred on this account from the inception of this account to the present date.

## In regards to late fees:

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1- Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2- Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3- Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4- Are late fees considered interest? Yes or No?

5- Please detail for us in writing what expenses and damages you incurred for any payment we made that was late.

6- Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7- If yes, please describe what expenses or damages were charged or assessed to this account.

8- Please describe for us in writing what expenses you or others undertook due to any payment we made, which was late.

9- Please describe for us in writing what damages you or others undertook due to any payment we made, which was late.

10- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment or collection of late fees.

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 79 of 96
Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 15

15

11-    Please detail and list for us in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12-    Please detail and list for us in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13-    Please detail and list for us in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14-    Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15-    Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16-    Have any late charges been assessed to this account? Yes or No?

17-    If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18-    Please provide us with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim we have been late with a payment from the inception of this account to the present date.

19-    Have late charges been collected on this account from the inception of this account to the present date? Yes or No?

20-    If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

## In regards to Property Inspections:

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1- Have any property inspections been conducted on our property from the inception of this account to the present date? Yes or No?

2- If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3- If yes, please tell us the date of each property inspection conducted on our property that is the secured interest for this mortgage, deed of trust or note.

4- Please tell us the price charged for each property inspection.

5- Please tell us the date of each property inspection.

6- Please tell us the name and address of each company and person who conducted each property inspection on our property.

7- Please tell us why property inspections were conducted on our property.

8- Please tell us how property inspections are beneficial to us.

9- Please tell us how property inspections are protective of our property.

10- Please explain to us your policy on property inspections.

11- Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12- If yes, why?

13- Do you use property inspections to collect debts? Yes or No?

14-    Have you used any portion of the property inspection process on our property to collect a debt or inform us of a debt, payment or obligation we owe? Yes or No?

15-    If yes, please answer when and why?

16-    Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment or collection of property inspection fees.

17-    Have you labeled in any record or document sent to us a property inspection as a miscellaneous advance? Yes or No?

18-    If yes, why?

19-    Have you labeled in any record or document sent to us a property inspection as a legal fee or attorney fee? Yes or No?

20-If yes, why?

21.Please detail and list for us in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22. Please detail and list for us in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23-Please detail and list for us in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24-Please detail and list for us in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

25-Has interest been charged on any inspection fees assessed or charged to this account?  Yes or No?

26-      If yes, when and how much was charged?

28-      Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

29-      How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

30-      How much total in inspection fees has been collected on this account from the inception of this account to the present date?

31-      Please forward to us copies of all property inspections made on our property in this mortgage account file.

32-      Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?


## In regards to BPO Fees:

1- Have any BPOs (Broker Price Opinions) been conducted on our property? Yes or No?

2-  If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3- If yes, please tell us the date of each BPO conducted on our property that is the secured interest for this mortgage, deed of trust or note.

4- Please tell us the price of each BPO.

5- Please tell us who conducted the BPO.

6- Please tell us why BPOs were conducted on our property.

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 83 of 96

7- Please tell us how BPOs are beneficial to us.

8- Please tell us how BPOs are protective of our property.

9- Please explain your policy on BPOs.

10-    Have any BPO fees been assessed to this account? Yes or No?

11-    If yes, how much in total BPO fees have been charged to this account?

12-    Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment, charge or collection of a BPO fee from us.

13-    Please send to us copies of all BPO reports that have been done on our property.

14-    Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

## In regards to Force-Placed Insurance:

1- Have you placed or ordered any force-placed insurance policies on our property?

2- If yes, please tell us the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.

3- Please tell us the price of each policy.

4- Please tell us the agent for each policy.

5- Please tell us why each policy was placed on our property.

6- Please tell us how the policies are beneficial to us.

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 84 of 96

7- Please tell us how the policies are protective of our property.

8- Please explain to us your policy on force-placed insurance.

9- Have any force-placed insurance fees been assessed to this account? Yes or No?

10- If yes, how much in total force-placed insurance fees have been assessed to this account?

11- Have any force-placed insurance fees been charged to this account? Yes or No?

12- If yes, how much in total force-placed insurance fees have been charged to this account?

13- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment, charge or collection of force-placed insurance fees from us.

14- Do you have any relationship with the agent or agency that placed any policies on our property? If yes, please describe.

15- Do you have any relationship with the carrier that issued any policies on our property? If yes, please describe.

16- Has the agency or carrier you used to place a forced-placed insurance on our property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17- Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18- Please send to us copies of all forced-placed insurance policies that have been ordered on our property from the inception of this account to the present date.

Appeal: 11-1101    Doc: 8    Filed: 04/06/2011    Pg: 85 of 96
Case: 11-1101    Document: 00413281064    Date Filed: 04/06/2011    Page: 21

21

## In regards to Servicing:

For each of the following questions listed below, please provide us with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1- Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2- Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

3- Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4- Please identify for us where the originals of this entire account file are currently located and how they are being stored, kept and protected.

5- Where is the original monetary instrument or mortgage we signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6- Where is the original deed of trust or mortgage and note we signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7- Since the inception of this account, has there been any assignment of our monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8- Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9- Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10- Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11- Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for us each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12- Has each and every assignment of our asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13- Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14- Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15-    Please identify for us the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16-    Please provide us with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17-    How much was paid for this individual mortgage account by you?

18-    If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

19-    If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

20-    Who did you issue a check or payment to for this mortgage loan?

21-    Please provide us with copies of the front and back of the canceled check.

22-    Did any investor approve of the foreclosure of my property? Yes or No?

23-    Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24-    Please identify all persons who approved the foreclosure of our property.

Please provide us with the documents we have requested and a detailed answer to each of our questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and our congressman.

It is our hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

## Default Provisions under this **QUALIFIED WRITTEN REQUEST**

Bank of America or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) Asad Sammi Niyaz &Mehboob Imam or any property or collateral connected to Asad Sammi Niyaz &Mehboob Imam or account #**157052892** and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1- Asad Sammi Niyaz &Mehboob Imam's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment Bank of America may have or may have had in connection with account #**157052892** and any property and/or real estate connected with account #**157052892**.

2- Asad Sammi Niyaz &Mehboob Imam's right to have any certificated or uncertificated security re-registered in Asad Sammi Niyaz &Mehboob Imam, and only Asad Sammi Niyaz &Mehboob Imam name.

3- Asad Sammi Niyaz &Mehboob Imam's right of collection via Bank of America's liability insurance and/or bond.

4- Asad Sammi Niyaz &Mehboob Imam entitlement in filing and executing any instruments, as power of attorney for and by Bank of America, including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing

Statement with the Secretary of State in the State where Bank of America is located.

5- Asad Sammi Niyaz &Mehboob Imam's right to damages because of Bank of America's wrongful registration, breach of intermediary responsibility with regard to Asad Sammi Niyaz &Mehboob Imam's asset by Bank of America issuing to Asad Sammi Niyaz &Mehboob Imam a certified check for the original value of Asad Sammi Niyaz &Mehboob Imam's monetary instrument.

Asad Sammi Niyaz &Mehboob Imam's right to have account #**157052892** completely set off because Bank of America's wrongful registration, breach of intermediary responsibility with regard to Asad Sammi Niyaz &Mehboob Imam's monetary instrument/asset by Bank of America sending confirmation of set off of wrongful liability of Asad Sammi Niyaz &Mehboob Imam and issuing a certified check for the difference between the original value of Asad Sammi Niyaz &Mehboob Imam's monetary instrument/asset and what Asad Sammi Niyaz &Mehboob Imam mistakenly sent to Bank of America as a payment for such wrongful liability.

Bank of America or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Bank of America in accordance with Bank of America's Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Bank of America's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When Bank of America fails by not rebutting to any part of this RESPA REQUEST Bank of America agrees with the granting unto Asad Sammi Niyaz &Mehboob Imam's unlimited Power of Attorney and any and all full authorization in signing and endorsing Bank of America's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this

agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by Bank of America waives any and all claims of Asad Sammi Niyaz &Mehboob Imam, and/or defenses and remains in effect until the satisfaction of all obligations by Bank of America have been satisfied.

Sincerely,

Asad Sammi Niyaz &Mehboob Imam
dated  8/28/2009    Dated  8.25-09



THIS WAS USED BY MR. SAMUEL I. WHITE in a Foreclosure Case in ASHBURN Virginia

PLEASE SEE HER SIGNATURE ON EXHIBIT-C

She is not Assistant Secretary For MERS????

MERS is in Reston Virginia and not in Texas

IN WITNESS WHEREOF, the Beneficiary has caused this Substitution of Trustee(s) to be signed by its duly authorized officer on this 30th day of July, 2009.

she is signing for Asst. secretary MERS ON THE OTHER she signs as Assistant Secretary US Bank National Association Ms. Julie C. Webb is wearing too many hats for financial and non financial institutions

By: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Julie C. Webb        Assistant Secretary

Please compare her signatures with the instrument/assignment for Mr. MEHRA

Signatures not identical?????

STATE OF Texas
COUNTY OF Dallas
On 8-3-09, before me, Christopher A. Williams, personally appeared Julie C. Webb, Assistant Secretary, known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

Notary Public's Signature

Why this was not notarized in Reston Virginia where MERS office is located. Why it was notarized in Dallas Texas????????

These are also fake, I have seen his signature in a different way????

Why this was not Notarized on 07/30/2009, why it was notarized after 05 days (08/03/2009)

CHRISTOPHER A. WILLIAMS My Commission Expires June 20, 2012

Great Fraud by Mr. Samuel I. White and RECONTRUST COMPANY owned by Bank of America

RECONTRUST COMPANY,NA is not resident of Virginia and can not be TRUSTEE This is a violation of Virginia UPL Opinion 198 approved by the Supreme Court of Virginia

Samuel I. White PC can not be a Trustee as he is involved in the Fraud of preparation of fake, fabricated and illegal assignment, When he is involved in FRAUD, he can not do his FIDUCIARY duties towards the Borrower????

Mr. Samuel I. White are acting as a vehicle for this FRAUD and is working with the Joint Venture with the LPS, who has admitted this documents Fraud in their Annual Report 10 K on 02/23/2010 filed before the SEC as per SEC file # 00`1-34005 dated 02/23/2010.

Prepared by RECONTRUST COMPANY, N.A. and SAMUEL I. WHITE, P.C.
Tax ID # 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-000        Page 2 of 2

VASU/B (12/08)

EXHIBIT-D



Please see the signature of Julie C. Webb on the other assignment

Signatures are not identical????? FRAUD

she is signing for Asst. secretary U.S. Bank National Association
ON THE OTHER she signs as Assistant Secretary MERS
Ms. Julie C. Webb is wearing too many hats for financial and non financial institutions

PLEASE SEE HER SIGNATURE ON EXHIBIT-D

Notary's Misconduct, renders this assignment VOID

This Notary Shameca L. Harrison was already caught by various courts in Notary's Misconduct

She uses her office address of RECONTRUST

Please compare her signatures with the instrument/assignment for Mr. SAMMI's Assignment

Signatures not identical?????

IN WITNESS WHEREOF, the Beneficiary has caused this Substitution of Trustee(s) to be signed by its duly authorized officer on this _____ day of _____ 2009.

By: U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE HOLDERS OF SARM 2003-16XS

Assistant Secretary

Julie C. Webb

STATE OF
COUNTY OF

Texas
Dallas

Julie C. Webb
Assistant Secretary

On _____, before me _____ Shameca L. Harrison _____ personally appeared _____, known to me (or proved to me on the oath of _____ or through _____ to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL.

Notary Public's Signature

SHAMECA L. HARRISON,
My Commission Expires
August 13, 2012

Why this was not Notarized on 09/23/2009, why it was notarized after 10 days (10/02/2009)

Great Fraud by Mr. Samuel I. White and RECONTRUST COMPANY owned by Bank of America

RECONTRUST COMPANY,NA is not resident of Virginia and can not be TRUSTEE
This is a violation of Virginia UPL Opinion 198 approved by the Supreme Court of Virginia

Mr. Samuel I. White are acting as a vehicle for this FRAUD and is working with the Joint Venture with the LPS, who has admitted this documents Fraud in their Annual Report 10 K on 02/23/2010 filed before the SEC as per SEC file # 00`1-34005 dated 02/23/2010.

Prepared by: RECONTRUST COMPANY, N.A. and SAMUEL I. WHITE PC
Page 2 of 2

EXHIBIT-C

Samuel I. White PC can not be a Trustee as he is involved in the Fraud of preparation of fake, fabricated and illegal assignment, When he is involved in FRAUD, he can not do his FIDUCIARY duties towards the Borrower????

John Christian Barlow, #12438
40 N. 300 E. #101
Saint George UT 84770
Telephone No. 435-688-1170
Fax No. 435-215-2420
JCB@EnvisionLawFirm.com
Attorney for Plaintiff

# ORIGINAL

IN THE FIFTH JUDICIAL DISTRICT COURT
IN AND FOR WASHINGTON COUNTY, STATE OF UTAH

| | |
|---|---|
| .ividual, | [PROPOSED] AMENDED PRELIMINARY INJUNCTION ORDER |
| vs. | |
| RECONTRUST COMPANY, N.A.; BANK OF AMERICA HOME LOANS SERVICING, LP; BANK OF AMERICA, FSB; NEW LINE MORTGAGE, DIVISION OF REPUBLIC MORTGAGE HOME LOANS, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and DOES 1 – 5, | Civil No. 100501521 Judge: James L. Shumate |
| Defendants. | |

Based on Plaintiff's APPLICATION FOR A PRELIMINARY INJUNCTION and

MEMORANDUM IN SUPPORT OF APPLICATION FOR A PRELIMINARY INJUNCTION

and in accordance with Utah Rules of Civil Procedure Rule 65(A), a PRELIMINARY

INJUNCTION ORDER is hereby granted against Defendants in favor of Plaintiff, disallowing Defendants from conducting trustees sales in the State of Utah.

Irreparable injury shall result if Defendants are allowed to conduct trustee's sales in the State of Utah. Plaintiff has filed an action against Defendants to determine that the Defendant ReconTrust is not registered with the Utah Division of Corporations and therefore may not transact business in the State of Utah pursuant to Utah Code §16-10a-1501 which states that a "foreign corporation may not transact business in this state until its application for authority to transact business is filed by the division.".

This order is binding on the parties to this action, their officers, agents, servants, employees, and attorneys, and upon all who are in active concert with them who receive this notice.

22 May 10
07:09

DISTRICT COURT JUDGE

2

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE

## FOURTH CIRCUIT COURT OF APPEALS

Asad Samee Niyaz

**Plaintiff- Appellant**

V

**Case# 11-1101, <u>Asad Niyaz V. Bank of America</u>**
**1:10-cv-00796-JCC-TCB**

 Bank of America

Country wide Home Loans, Inc

America's Wholesale Lender

Bank of America et al

BAC Home Loans Servicing

Bank of New York

Reconstruct Company, NA

 Mortgage Electronic Registration System Inc

ALG Trustee, LLC

Samuel I. White, P.C

John-Does et al

**Defendant –Appellee**

## <u>PROPOSED ORDER</u>

Appellant Asad Sammi Niyaz filed an appeal in this court on

01/28/2011, which is pending. Based on Appellant's motion for

stay/ Preliminary Injunction with the supporting documents as evidence

INJUNCTION ORDER is hereby granted against the Defendants Appellee in favor of Plaintiff-Appellant, disallowing Defendant et al from conducting Trustee's sales in the State of Virginia, till the outcome of the Appeal.

 This order is binding on the parties to this action, their officers, agents, servants. Employees, and attorneys, and upon all who are active concert with them who receive this notice.


_____

JUDGE

FOURTH CIRCUIT COURT OF APPEALS