# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT COURT

No. 11-1101

Asad Niyaz

       Plaintiff-Appellant

V

Bank of America

       Defendant-Appellee et al

## APPELLANT WRIT OF CERTIORARI TO US SUPREME COURT

1. Comes now Plaintiff-Appellant, "Petitioner" moves the court and file the "WRIT OF CERTIORARI" to the United States of Supreme Court, against the order of this Court entered on 08/11/2011 in the above case.

2. Petitioner is required to file "WRIT OF CERTIORARI" to the United States Supreme Court within 90 days of the entry of this court order (08/11/2011)

3. The total number of copies of "WRIT OF CERTIORARI" with the Appendix is 11 including the Original. One extra copy is sent for the stamp and return to the Petitioner.

4. Kindly let the Petitioner know about the filing fee if any and where to deposit,

                         Respectfully submitted please

*Asad S. Niyaz*

Asad Sammi Niyaz
20278 Glen robin Terr, Ashburn VA 20147

Sam eeniyaz@gmail.com
October 04 , 2011

## CERTIFICATEOFSERVICE

I, Asad Sammi Niyaz,  Pro Se, certify that today, October 4, 2011, a copy of the brief for appellant, a copy of the record excerpts, and the official record in this case, consisting of NUMBER volume(s) of the pleadings, NUMBER volumes of transcript, NUMBER volumes of supplemental record, and NUMBER envelope(s) of exhibits, were served upon  to all of the Defendants through Defendant's Counsel on record, Mr. Constantinos G, Panagopoulos at his office address located at 601 13th Street NW, Suite 1000 South Washington DC 20005 and to Mr. Samuel I. White PC on his office address located at, 5040 Corporate Woods Drive Suite 120 Virginia Beach VA 23462-6523 via USPS, first class mail postage paid.

*Asad S. Niyaz*

Asad Sammi Niyaz
20278 Glen robin Terr, Ashburn VA 20147
Date 10 / 04 / 11
sameeniyaz@gmail.com

2

No. 11-1101

# In The

# Supreme Court of the United States

**Asad Niyaz**

**Petitioner,**

**V.**

**Bank of America et al**

**Respondents**

## On Petition for Writ of Certiorari

## To The United States Court of Appeals

## For The Fourth Circuit

## PETITION FOR WRIT OF CERTIORARI

**ASAD SAMMI NIYAZ**

**20278 GLENROBIN TERRACE**

**ASHBURN VIRGINIA 20148**

**(571) 275-0831**

**Pro se Petitioner**

# QUESTIONS PRESENTED

The following questions are presented by the petitioner;

1. Does Appellate Court err in deciding/ ruling in favor of a party which failed to file the "BRIEF" in the Appellate Court?

2. Is the party in default by not filing the brief can get favorable decision in Appellate Court?

3. HOW WOULD A TEMPORAY Lender's SERVICER, SUBSERVICER, Master Servicer, misapply and/or just LOSE PAYMENTS MADE BY CONSUMERS, plaintiff in this case AND LENDERS and INVESTORS who 'GET AWAY LYING TO COURTS' THEY HAVE NO DATA?

4. Plaintiff signed a promissory note and investor receives a "BOND" having different terms added. Is "Note" and "Bond" are the same thing?

5. What is the status of the note when defendants added different terms on the "NOTE"?

6. What is rigging of bids in foreclosure case?

7. Can a non- creditor participate in credit bids when the non-creditor was not a creditor?

8. Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary" within the terms of Deed of Trust, when it was not a creditor and there was no name of MERS on the Promissory Note Signed by the borrower?

9. Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary" within the terms of Deed of Trust, if it never held the promissory notes secured by the deed of trust?

10. If so, what is the legal effect of Mortgage Electronic Registration Systems, Inc., acting as an unlawful beneficiary on the Deed of Trust?

11. Does a homeowner possess a cause of action under Virginia's Consumer Protection Act against Mortgage Electronic Registration Systems, Inc., if MERS acts as an unlawful beneficiary on the Deed of Trust, and not being a creditor?

12. Can Countrywide use fictitious trade name on the Deed of Trust and Promissory Note

13. Is Appellee et al responsible in some manner for the occurrences alleged in Appellant Appeal brief, and that Appellant's damages were proximately caused by the defendants- Appellee et al and at all times mentioned in this petition, were the agents, servants, representatives, and/or employees of their co-defendants, and in doing the things hereinafter alleged were acting in the

## PETITION FOR WRIT OF CERTIORARI

1. Asad Sammi Niyaz, on behalf of himself, hereby petitions for a writ of certiorari to review the judgment of the United States Court of Appeals for the Fourth Circuit, filed on August 11, 2011. There was no good-faith

2

determination of the law in petitioner's consolidated cases in either the district court or in the Fourth Circuit Court of Appeals.

## OPINION BELOW

2. The unreported Court of Appeal's Opinion affirming the judgment of the consolidated cases of District Court, entered on January 03, 2011, and is reproduced at petitioner's App-1. The Court of appeal's judgment entered on August 11, 2011, is reproduced as App-2

## JURISDICTIONAL STATEMENT

3. The Court of Appeal's final judgment was entered on August 11, 2011. This Court's jurisdiction is invoked pursuant to 28 U.S.C § 1254 (1)

## ASSIGNMENT OF ERROR

4. Plaintiff Appellant filed timely appeal in the Court of Appeal on January 28, 2011 [App-3, Appellate Court Docket # 1 entered on 02/02/2011]. Plaintiff-Appellant timely filed informal opening Brief on 02/28/2011[App-3, Appellate Court Docket # 2 entered on 02/28/2011].

5. Defendants-Appellee's Informal Response Brief was due 17 days after Plaintiff-Appellant's Informal Brief [App-3, Appellate Court Docket # 2 entered on 02/02/2011]. Defendants-Appellee did not[1] file any Informal

---

[1] A written statement that each side gives to the Court that explains why the Court should decide that they are right. A brief presents a party's arguments about the issues on appeal and cites to legal authorities (such as statutes, rules or case law) to support their positions. The Appellant argues why the trial court's decision was an error or mistake; the Appellee argues why the trial court's decision was correct.

Brief in Court of Appeal and were in default. As of Judgment of the Court of Appeal the Defendants-Appellee never filed the Informal response brief, which is obvious from the Appellate Court's Docket [App-3].

6. Defendant Appellee did not request the court for extension of time to file response to informal brief of the Plaintiff-Appellant and showed disrespect to Court's Briefing Order [App-3].

7. Defendant-Appellee lost their opportunity to respond the argument made by the Plaintiff-Appellant in his informal opening brief. See Schreyer V. Chaplain, 416 Md. 94,101 (2010).

8. Court of Appeal affirmed the District court's Judgment without even considering that the Appellee never filed the Brief and were in default, showed disrespect to the Appellate Court order dated 02/02/2011[App-3, Appellate Court Docket # 2 entered on 02/02/2011].

9. Court of Appeal erred in affirming the District Court's Judgment without even noticing that Appellee failed to file the Brief as ordered.

<u>STATEMENT OF THE ISSUES</u>

10.Did the Fourth Circuit Court of Appeals err by allowing the Defendants-Appellee to benefit when the Appellee failed to file their brief, Defendant-Appellee lost their opportunity to respond the argument made by the Plaintiff-Appellant in his informal opening brief and showed disrespect to

4

the Court's order dated 02/02/2011and Fourth Circuit Court erred in

affirming the District Court's Judgment [App-3, Appellate Court Docket # 2

entered on 02/02/2011].

11. Did District Court err by allowing the Appellee in granting their motion to

dismiss when the Appellee did not have any standing and proceed with the

foreclosure, when Appellee was informed by the Appellant as per para 22 of

the Deed of Trust on May 29, 2010[App-4] when the foreclosure on the

appellant's primary residence was initiated by the Appellee, fraudulently

with fake fabricated by the Defendants Recon Trust Company and SIWPC

by using the "robo signer Ms. Julie Webb? Please see, Deutsche Bank

National Trust Co v. Maraj N.Y Sup, 2008 No 2598/07 Jan 31, 2008.

(Deutsch Bank, Indymac Bank & MERS, Erica Johnson-Seck VP, wears

different hats for MERS, Indymac and Deutsch Bank as VP and submits

fake, defective affidavit/ instruments for which the court has taken serious

view) Deutsche Bank v. HARRIS - Judge SCHACK 05Feb2008 …Indymac

Bank, FSB v. Bethley - Schack, J. February 2009 (The tale of too many hats)

they must also actually own the note. If the note was securitized (sold in a

pool of notes on Wall Street) that means the real party in interest is the

Trustee of the securitization trust, not the servicing agent. See LaSalle Bank

N.A. v. Nomura Asset Capital Corp., 180 F. Supp. 2d 465, 469-71 (S.D.N.Y

2001), Cox v. Recon Trust Co., 10-04117 Court of Appeals for 10th Circuit (Denver), ("LaSalle-Nomura"); accord, LaSalle Bank N.A. v. Nomura Asset Capital Corp., 180 F. Supp. 2d 465, 469-71 (S.D.N.Y 2001). In Re. Jacobson, 2009 WL 567188 (Bky.W.D. Wash. March 6, 2009( Motion for relief from automatic stay of Movant UBS AG was denied due to lack of standing as Servicer and had no authority to foreclose the mortgage.)

12. Did District Court err, when Appellant Plaintiff requested District court to take judicial notice of the declaration of Gary C. Tepper and Kerry Walthall, as these are fraudulent, on the face of these declarations, which were not notarized and not under oath, this is the clear fraud upon court and on Appellant Plaintiff by the Appellee Defendants and their counsel who is acting as a vehicle in this fraud of civil theft, but District court did not take any action and Fourth Circuit Court of Appeals erred and did not take notice when the US District Court Judgment was affirmed. [App-5, District Court Docket # 22,23, 26,29,31,34,39].

13. Did District Court err in suppressing the appellant's Notice to inform the Defendants that if the Defendants failed to modify the Appellant's mortgage then the matter will be referred to the court for seeking the justice [App-4] per Deed of Trust "para 22. Trial Court and Fourth Circuit Court of Appeals

erred and did not take notice when the US District Court Judgment was affirmed.

14. Did the District Court err in suppressing the appellee's failure to respond to appellant's Discovery request? And Fourth Circuit Court of Appeals erred and did not take notice when the US District Court Judgment was affirmed.

15. Did District Court err in suppressing the Appellant's request to object the Appellee remanded the case to District Court from Loudoun County Circuit Court? Appellee's notice of removal was not timely. Appellee filed the notice on 07/19/2010, after 48 days and falsified before the court that removal notice is less than 30 days, whereas the notice was filed after 48 days. [ App-5, Docket #5 dated 08/16/2010 ] Please see Plaintiff's objection to Defendant's fraud and falsification [App-5 Docket # 5 dated 08/16/2010]. Fourth Circuit Court of Appeals erred and did not take notice when the US District Court Judgment was affirmed.

16. Did District Court err in suppressing the Appellant's request, when Appellant requested the District Court for first seeking the default judgment and, a remand the case back to state court, because the time limit for removal is mandatory, *see McKinney v. Bd. of Trs. of Mayland Cmty? Coll.*, 955 F.2d 924, 925 (4th Cir. 1992), and if the Notice of Removal was not

timely filed the case should be remanded without further proceedings. In the

present case the notice of removal was not timely and Defendants falsified in

writing and said that "the notice of removal was less than 30 days "when it

was filed after 48 days just to mislead the court. A notice of removal must be

filed within thirty days of receipt by the defendant through formal service of

the state court process.  *See* 28 U.S.C.A. § 1446(b) (West 1994); *Murphy*

*Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 342, 347-48 (1999).

Fourth Circuit Court of Appeals erred and did not take notice when the US

District Court Judgment was affirmed.

17. Appellee Defendants even failed to appear before the Loudoun County

Circuit court on 06/10/2010, when the notice of hearing was served to them,

proof filed with the court. [App-6, docket report of Loudoun County Circuit

Court].the, the Defendants failed to file the response in the state court. [App-

6]**.** Fourth Circuit Court of Appeals erred and did not take notice when the

US District Court Judgment was affirmed.

18.Appellant plaintiff contends that the removal clock started to run when the

Defendants MERS and Defendant SIWPC, the defendants' statutory agent,

received the suit papers on June 03, 2010, and thus notice of removal,

filed on July 19, 2010, was untimely and based on the intentionally

falsification to mislead the court by the Appellee Defendants. Fourth Circuit

8

Court of Appeals erred and did not take notice when the US District Court Judgment was affirmed.

19. Under Virginia procedure, the Appellee defendants' responsive pleadings in state court were due on June 23, 2010, twenty-one days after the certificate of compliance was filed in the state court clerk's office. *See* Va. Sup. Ct. R. 3:5. No such responsive pleadings were filed, but on July 19, 2010, the Notice of Removal was filed in this court. No default judgment was entered by the state court prior to removal. [App-5, Docket entry # 1 entered on 07/19/2010].

20. The case removed from state court, based on Appellee Defendant's falsification, the Appellant plaintiff contends that the Appellee defendants did not timely file a notice of removal. [App-6, docket entry #5 entered on 08/16/2010].    In addition, the Appellant plaintiff request this Honorable court, that because the Appellee defendants did not file responsive pleadings in state court, fail to appear before the court on the date given by the court, before removal, this court should enter default judgments against the Defendants and take judicial notice of the Defendant's falsification before the court intentionally just to mislead the District Court. [App-6, docket entry #5 entered on 08/16/2010].

21. The defendants ought to answer in state court within the time permitted by state law, if possible, even if the case is removed, since if the case is thereafter remanded

by the federal court, the state court may then enter a default judgment, which was not done in this case.

22. Did District Court err, in holding the evidentiary hearing and decided the case in favor of a party which never existed and deprived the appellant of his due process according to the 5th and 14th amendment of Constitution of United States of America? [App-5, docket entry #0 (between entry 35 & 36) entered on 01/03/2011] **and** [App-5, docket entry #36&37 entered on 01/03/2011].

23. Did the District Court err in suppressing the appellee's failure to provide documents requested in Qualified Written Request under RESPA and in Discovery request by the Appellant? [App-5, docket entry #22 and 23 entered on 10/22/2010 and 10/28/2010].

24. The capacity to maintain judicial action by the Appellee Defendants was and is questionable. The appellee's attorneys have hidden the true facts of real party in interest from the court and falsified before the court when Appellee Defendants failed to comply the Condition, in 24 CFR § 203-604. Appellant Plaintiff demand compliance with a federal regulation that requires a lender insured by the Federal Housing Administration to hold a face-to-face meeting with the borrower before beginning foreclosure. That condition, in

24 C.F.R. § 203.604, is part of the contract.  Appellee defendant failed to send a proper 30-day cure notice

## STATEMENT OF CASE

### I.    BRIEF FACTS ABOUT CIRCUIT  COURT PROCEEDINGS

25. The issue that the appellant raise on this appeal concerns the facts that Appellee Defendants  et al initiated Foreclosure against the appellant's primary residence located at 20278 Glen robin Terr Ashburn VA 20147. [App-6] when they never were the real party in interest and their capacity to maintain judicial action was questionable

### II.    BRIEF FACTS ABOUT DISTRICT COURT PROCEEDINGS

26.  Appellee Defendant's notice of removal was not timely. Defendants filed the notice on 07/19/2010, after 48 days and falsified before the court that removal notice is less than 30 days, whereas the notice was filed after 48 days. [ APP-5 ( Docket #1 dated 07/19/2010) ] Please see Appellant Plaintiff's objection to Defendant's fraud and falsification [App-5 (Docket # 5 dated 08/16/2010) ]*see McKinney v. Bd. of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 925 (4th Cir. 1992), and if the Notice of Removal was not timely filed the case should be remanded without further proceedings. In the present case the notice of removal was not timely and Defendants falsified in writing and said that "the notice of removal was less than 30 days "when it was filed after 48 days just to mislead the court. A notice of removal must be

11

filed within thirty days of receipt by the defendant through formal service of

the state court process. *See* 28 U.S.C.A. § 1446(b) (West 1994); *Murphy*

*Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 342, 347-48 (1999)

27. Appellant's case was decided without hearing, depriving the due process

III.         STANDING ISSUE OF APPELLEE

28. Appellee Defendants have fabricated the, assignments from MERS signed by the
Ms. Julie Webb, a robo-signer and not an employee of the Defendant MERS[2], but
signs as the Assistant Secretary of the MERS[3]. The signatures of Ms. Julie Webb
were not identical and various courts have taken serious view of her signing and
wearing of different hats for financial and non-financial institutions. [App-5 Docket
# 10 dated 09/08/2010, EX-E & F(already filed with the original complaint in state
court as Ex-C&D ]

29. MS. Julie Webb and Defendant Mr. Samuel I. White created these fake, fabricated
and illegal assignments. These assignments were prepared by the Defendant Samuel
I. White and committed fraud upon the court and on Appellant Plaintiff. [ Please see
the certificate of Defendant Samuel I. White on these assignments ]

30. The original nominal lender "America's Wholesale Lender" is still there in the
Loudoun County Lands Record and Chain of Transfer was not perfected

31. The appointment of substitute Trustee was illegal. Defendant MERS does
not have any authority to appoint the substitute Trustee. Defendants failed to
appoint substitute Trustee as per para 24 of the Deed of Trust, which states

---

[2] MERS was named as beneficiary on the Deed of Trust when MERS was not creditor and there was no name of
MERS on the promissory note. MERS cannot be beneficiary when it is not a creditor, this separates the Deed of
Trust and note, making Deed of Trust "VOID" and Note "UNSECURED"
[3] MERS does not have any authority to appoint substitute Trustee only lender can appoint. MERS is not creditor and
lender. Please see item # 24 of the Deed of Trust.

that only Lender has the power to appoint the substitute trustee and not the

Defendant MERS, when it was not even a creditor. Defendant MERS was

not creditor and this substitution of trustee was in violation of Virginia Code

§ 55-59.9. The Virginia Code, § 55-59.9 states, "The party secured by the

deed of trust, or the holders of greater than fifty percent of the monetary

obligations secured thereby, shall have the right and power to appoint a

substitute trustee or trustees". This is also a violation of "Para-24" of Deed

of Trust. Mortgage electronic Registration System Inc, "MERS" does not

have more than 51% of monetary obligations secured by and are not parties

secured by the Deed of Trust.

32. The Declaration of Gary C. Tepper is false, fabrication and fraud upon court. Para 4
of the Declaration of Gary C. Tepper is fraud on the face of Exhibit-F attached with
this declaration. Garry C. Tepper tempered with the Appellant Plaintiff's response of
the interrogatory, because the true response can be seen the documents filed by the
Plaintiff in this court on 11/30/2010[App-5 (Docket # 29, 30, 31 dated 11/30/2010)].
Honorable court can see both of these (filed by Plaintiff and the Exhibit-F of the
Gary C. Tepper's declaration). This declaration of Gary C. Tepper was not notarized
and not under oath. Appellant Plaintiff requests the court to take judicial notice of
this fraud upon the court. **The affidavit of Kerry Walthall is fraud upon the
court, not notarized and not under oath.** Affidavit was signed "outside the
immediate physical presence of a notary and without direct personal knowledge of

the information in the affidavit, the pressure is building on two issues: forgery[4] (and the notarization criminal penalties) and the act of perjury.

- They have honed their craft and predatory schemes over the last two decades in what are commonly termed as "foreclosure factories and mills." One of the many predatory servicing practices developed was the use of known false, fraudulent, and forged affidavits, assignments, and satisfactions of mortgages.

- Debt extinguishment or dismissal of foreclosure actions could be obtained if it can be shown that the entity filing the foreclosure: • • • • • Does not own the note; Made false representations to the court in pleadings; Does not have proper authority to foreclose; Does not have possession of the note; and/or All indispensable parties (the actual owners) are not before the court or represented in the pending foreclosure action.

- The affidavits, and satisfactions; Pre-stamped assignments and notary signatures on assignments, affidavits and proof of claims; Second page notarizations that are attached to documents that do not conform in type and style to the first page of the document; Automated signatures on computer of "both" the notary and the

---

[4] "The mortgage and banking industry is so corrupt, and has specifically, strategically and systematically been put into place by laws that keep the individual from having any control over the powers that be." "The legalities of them being able to foreclose are totally tainted," "The courts look at banks as being those who render the truth and get the benefit of the doubt."

signatory; and Backdating of dates on assignments and signatures of officers dating years after a company has been out of business or gone bankrupt.

- The  Appellant plaintiff is concerned that there is a fraud by the Defendant Bank of America et al and their counsel upon court and their attorneys are acting a vehicle in this fraud in stealing the plaintiff's home by using these false, fraudulent affidavits and also they assist in concealing known frauds and abuses by these Defendants from the court

33. BAC may be owned by the Bank of America. Countrywide failed to transfer the note to Bank of America, Please see the Deposition given by the Ms. DeMartini the employee of Bank of America before the Bankruptcy Court District of New Jersey, case No. 08-18700 and case No. 082448, John K. Temp v. Countrywide Home Loans where she admitted under oath before the Judge that the Promissory notes were never transferred to Bank of America by the Countrywide

34. The note produced with the fake and fabricated affidavit of Kerry Walthall (App-5), does not have any single endorsement and the note itself speaks that the BAC or Bank of America is not the owner of the Plaintiff's note and does not have any standing;

a) It is axiomatic that in order to bring a suit, like a foreclosure action, the Appellee must have legal standing, meaning it must have a direct interest in the outcome of the legislation. In the case of a mortgage foreclosure, only the mortgagee has such an interest and thus standing.

b) In Present case, the signer like  Kerry Walthall of affidavits appear to have signed documents attesting to information that he did not verify and without a notary present.

a) Many of the issues relating to foreclosure fraud by mortgage servicers, ranging from more minor procedural defects up to outright counterfeiting relate to the need to show standing.

b) Thus problems like false affidavits of indebtedness, false lost note affidavits, and false lost summons affidavits, as well as backdated mortgage assignments, and wholly counterfeited notes, mortgages, and assignments all relate to the evidentiary need to show that the entity bringing the foreclosure action has standing to foreclose.

c) The assignment of Ms. Julie Webb was fake fabricated and illegal on its face [App-5, Docket # 10 dated 09/08/2010, Exhibit-E & F ]

## SUMMARY OF ARGUMENT

I V.  <u>NOTICE OF FORECLOSURE WAS NOT TIMELY</u>

35. Appellee Defendants breached a notice obligation under a deed of trust securing

Appellant Plaintiff's property.  Appellant Plaintiff argues that the Appellee

Defendant's right of acceleration under the Deed of Trust had not accrued, when

Defendants Recon Trust and Samuel I. White sent the foreclosure notice. Therefore

Defendant's notice of foreclosure sale was effectively a nullity, because it could not

exercise a right of acceleration that had not matured as a result of Defendant's failure

to provide the pre-acceleration notice required by the Deed of Trust.

36. **Appellant Plaintiff was not in default but received the Foreclosure notice on**

**05/29/2010 and the sale was scheduled for 06/11/2010 and notice was not in**

**time. Defendant failed to send the Default notice to Appellee Plaintiff or the co-**

**borrower Mr. Mehboob Imam.**

37. Appellant Plaintiff also contends that the pre-acceleration notice under the Deed of

Trust is a condition precedent to the accrual or maturing of a right to accelerate the

indebtedness secured by the Deed of Trust and that this condition precedent was not

fulfilled. Plaintiff relies on the language of Paragraph 22 that: "Lender prior to

acceleration shall give notice to Borrower as provided in paragraph 22 hereof."

Paragraph 22 further provides that only "[i]f the breach is not cured on or before the

date specified in the [pre-acceleration] notice, Lender, at Lender's option, may

declare all of the sums secured by this Deed of Trust to be immediately due and

payable." [App-7]

17

38. The notice of acceleration must be complete and effective prior to a foreclosure sale, found the notice provided to the debtor ineffective, and remanded the case for an award of monetary damages to the debtor against the beneficiary of the deed of trust. Sharpe, 215 Va. at 622-23, 212 S.E.2d at 277-78 In Plaintiff's case required notice was not given and thus the condition precedent to Defendant's right of acceleration was never met. Because Defendants did not comply with the specific condition precedent under the Deed of Trust [App-7], prior to the notice of foreclosure sale by the substitute trustee, Defendants had not acquired the right to accelerate payment under the terms of the Deed of Trust. [App-7]

39. The statutory cure of Code § 55-59.1(A) is of no benefit to Appellee Defendants because it had not acquired the right to accelerate the indebtedness secured by the Deed of Trust[App-7] when the foreclosure notice was issued. While Code § 55-59.1(A) does allow a proper notice of foreclosure sale to exercise an accrued right of acceleration, Defendants failed to fulfill the contractual condition precedent that would have given it such a right. Please see, Supreme Court of Virginia Opinion in the case BAYVIEW LOAN SERVICING, LLC v JANET SIMMONS, Record N0. 062715, opinion by JUSTICE G. STEVEN AGEE of 01/11/2008.

40. A deed for bond using capitalization consisting of the banks owns money

is insufficient to initiate and fulfill the requirements for a lawful foreclosure.

    a) MERS is a beneficiary for the successors and assigns on the Deed of Trust, without being a creditor and having no name on the Promissory Note [App-7, para 24 MERS does not have any authority, MERS is not creditor] Plaintiff-Appellant is informed and believes and alleges thereon that Plaintiff reviewed the MERS procedures Manual which is available for download at ;http://www.mersinc.org/MersProducts/manuals.as The Deed of Trust assignment after more than 04 years, in violation of "Trust document/PSA", "REMIC" also violate the MERS own written procedures found at page "66" of the MERS "Procedures Manual" which states that, **"MERS[5] cannot transfer beneficial rights to the debt, the debt can only be transferred by properly endorsing the promissory note to the transferee" . In Plaintiff's case the note signed by the Plaintiff does not have any of the endorsement.**

---

[5] **A creditor is not a creditor unless they are owed something. A beneficiary is not a beneficiary unless they are a creditor. In the case of a mortgage note, a beneficiary is not a creditor unless it is the obligee on the note (i.e., the one to whom the note directs payment). There is no escaping this logic.** The beneficiary must be an obligee of the secured obligation (usually the payee of a note), because otherwise the deed of trust in its favor is meaningless.

b) Plaintiff-Appellant is informed and believes and alleges thereon that Defendant "SIWPC" prepared, obtained the signatures of the "robo-signers" and misrepresented the true facts. "Assignment of Deed of Trust" from the Mortgage Electronic Registration System Inc "MERS" in violation of "PSA" where "MERS" transferred " Together with the note[6] or notes therein described or referred to, the money due and to become due thereon with interest…………….

c) This supports the argument for a bone-fide sale and purchaser for value.

d) Your purchaser is a mortgage pass thru investment trust, Alternative Loan Trust CWALT-2007-5CB

e) MERS is a nominal interest meaning a platform to register loans for stocks and bonds.

f) The loan is registered into a stock certificate

g) The loan sold for cash is received by your lender.

---

[6] **Deed of Trust did not specifically give MERS the right to assign the underlying notes." The assignment of the notes was beyond MERS' authority as nominee. Moreover, the record failed to show that the notes were physically delivered to MERS, as MERS was not creditor and there was no name of MERS on the Note, because the Notes were with the custodian of the Trust as per the PSA. Thus, because** AWL, BAC Home Loans and Bank of America **"merely stepped into the shoes of MERS," and "MERS" had an interest only in the mortgages — not the notes — leaving** AWL, BAC Home Loans and Bank of America **without the power to foreclose**

h) The cash received by lender is used to purchase registered mortgage pass thru certificate's

i) This means and method for their object relies on MERS to wash one asset for another

j) In accounting the process is known as "De-recognition" or off balance sheet financing

k) "Divesture" is what MERS uses to transfer the loan from a tangible asset to a financial asset.

41. The key evidentiary is the debt collector's role in the foreclosure. What you are seeing occur in courts across America is a judgment claim the attorneys are using in a foreclosure for purposes of executing a repossession of an unsecured asset, this is not foreclosure but rather, a clandestine and opaque procedure brought under the FDIC. The agency is acting as a receiver in a formal liquidation of assets. This forms the substance for Appellant Plaintiff's arguments for wrongful foreclosure in violation of constitutional rights to due process, slander, rights to home and house and other considerations under the 1st, 5th and 14th amendment.

## V. AMERICA'S WHOLESALE LENDER FICTIOUS TRADE NAME OF COUNTRYWIDE

42. A number of countrywide cases come up with the Note titled to "Americas Wholesale Lender." ("AWL") Nowhere in the deed of Trust [App-7], and Note[App-8], is Countrywide actually mentioned. Countrywide claims to be using the AWL name as a "trade name" but of course you cannot sue or maintain any cause of action in the name of a trade name.

43. Further complicating these situations is that there actually is a bona-fide New York Corporation with the name "Americas Wholesale Lender Inc."

44. That has interesting implications. As the Note [App-8], is made out to them, the payments should go to them. AWL will cooperate with the borrower to resolve these title issues, typically. The name of a "lender AWL" turns out to be a fictitious name (d/b/a) of some other entity. The use of fictitious names can get complicated and usually requires a court to sort it out. In the Plaintiff's case, which is nearly identical to several dozen Plaintiff has seen with other parties, the "originating lender AWL" is not even a legal entity. A legal entity is a natural person or a corporation or other business structure formed under the laws of a specific State. These "lenders" do not have a legal existence if they do not conform to state statute. In the Plaintiff's case the "AWL" does not has a legal existence as per Virginia statues.

45. It is often the case that an unrelated corporation exists in some state with the same name as the originating lender. As out contributor states, the fictitious

name "party" has no legal existence and cannot sue or defend any action. The legally formed entity with that name technically could claim the payments or rights under the obligation, note[App-8], or mortgage (Deed of Trust [App-7],) but obviously does not want to become embroiled in litigation over a deal with which it knows nothing about.

46. The proper way for this to be handled is for the title agent to correct it with a corrective instrument filed of record. And while there are a number of ways to do this, the best practice would be to have the borrower sign the corrective instrument so there is no cloud on title. The problems however is that borrowers are going to be loath to cooperate with such corrective instruments. Legally, the naming of a fictitious entity creates no rights under that instrument so neither the note nor the mortgage or Deed of Trust [App-7], would be a valid obligation or encumbrance. The fact that it was a table-funded loan (where the source of funding is hidden, which is a violation of TILA) may give rise to defenses and claims by the borrower. However, the party who was the source of funds may establish that they were the principal in that transaction and seek to impose an equitable lien or at least a perfected claim under the note. This is one example of why the technicalities matter.

47. Allowing fictitious entities to initiate foreclosures and sales clouds title further and open the door for moral hazard on the same scale that produced this mess in the first place.

48. We seek a stable marketplace instead of the chaotic effects of musical chairs at the point of declaring a default, foreclosure, auction and issuance of new title. That simply can't be done when the identity of the real party in interest is allowed to remain hidden and the accounting for all payments received is allowed to be ignored. In Appellant Plaintiff's case the Appellee Defendants failed to provide the documents requested in Discovery

49. The Appellant Plaintiff who is victims of this fraudulent appraisal and loan scheme, as well as parties who believe they are successors in title are going to need help in clearing title. Either the break in the chain of title is going to be routinely ignored, or the procedures allowed in foreclosures are going to be enforced. Appellant Plaintiff hopes it is the latter as it leads to a better result for society as a whole. But it is obvious that a lot more work needs to be done to illuminate this problem before anyone concedes it needs to be fixed.

50. On 04/10/2007, at Hartford, Connecticut the Defendant Countrywide was imposed $401,750) as a civil penalty and sanctions in a settlement agreement for Countrywide Home Loans, Inc. and Countrywide Home

24

Loans, Inc. d/b/a America's Wholesale Lender and the Banking Commissioner as per administration of Part I of Chapter 668, Sections 36a-485 to 36a-534a, inclusive, of the Connecticut General Statutes, "Mortgage Lenders, Brokers and Originators"; The settlement agreement was signed by the Banking Commissioner,  Haward F.Pitkin and the Mr. Andrew Gissinger III, President and Chief Operating Officer Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender. The following assurance was given by the Countrywide;

I, Andrew Gissinger III, state on behalf of Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender, that I have read the foregoing Settlement Agreement; that I know and fully understand its contents; that I am authorized to execute this Settlement Agreement on behalf of Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender; that Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender agree freely and without threat or coercion of any kind to comply with the terms and conditions stated herein; and that Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender voluntarily agree to enter into this Settlement Agreement, expressly waiving any right to a hearing on the matters described herein.

By: _____/s/_____
    Andrew Gissinger III, President and
    Chief Operating Officer
    Countrywide Home Loans, Inc. and Countrywide
    Home Loans, Inc. d/b/a America's Wholesale Lender

State of:  California

County of:  Los Angeles

51. AMERICA'S WHOLESALE LENDER *v.* LINDA K. SILBERSTEIN ET

AL. (AC 24592) *Argued October 15, 2004—officially released February 15,*

*2005, opinion by Hon.* DRANGINIS, J.

> "This appeal is similar to the appeal in *America's Wholesale Lender* v. *Pagano*, 87 Conn. App. 474, A.2d (2005), which we released on the same date as this opinion. The dispositive issue is whether a corporation that brings an action solely in its trade name, without the corporation being named as a party, has standing so as to confer jurisdiction on the court. We conclude that because a trade name is not an entity with legal capacity to sue, the corporation has no standing to litigate the merits of the case. We therefore reverse the judgment of the trial court"

52. An assignee, however, may not commence an action solely in a trade[7] name

either, regardless of the entity to which the trade name applies, because a

trade name is not an entity with the legal capacity to sue. See also *Buxton* v.

*Ullman*, 147 Conn. 48, 60, 156 A.2d 508 (1959), appeal dismissed sub nom.

*Poe* v. *Ullman*, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961). We

also recognize the heightened interest of the public in knowing who is

financially and personally liable for the actions of entities doing business

under trade names. *America's Wholesale Lender* v. *Pagano*, supra, 479–80.

53. In para 2 of Memorandum in support, under "Facts not in dispute" the Defendants

state that, "America's Wholesale Lender was a d/b/a of Countrywide Home Loans,

Inc., and this is reflected in the public records. (Walthall Decl. ¶2) **The statement of**

**the Defendants is false, misleading and fraud upon the court. America's**

---

[7] *America's Wholesale Lender* v. *Pagano,* supra, 87 Conn. App. 474, in which we held that the court lacked subject matter jurisdiction because Countrywide had commenced an action solely in its trade name. Our decision in that case rested primarily on the mandate that parties not use fictitious names.

**Wholesale Lender is the nominal lender on the Deed of Trust** [App-7], **and Note** [App-8]**,, and there is** nowhere in the Deed of Trust[App-7], and Note[App-8], is Countrywide actually mentioned. Countrywide claims to be using the AWL name as a "trade name" but of course you cannot sue or maintain any cause of action in the name of a trade name. (Walthall Decl. **¶2) was false and without having any personal knowledge.**

54. In response to Defendant's motion para 4 of facts not in dispute the Plaintiff's response is as following. Appellant Plaintiff filed Chapter-7 Bankruptcy and the $ 466,932 were discharged (Appellant Plaintiff's request of admission response to question # 12 dockets # 29, 30, 31 dated 11/30/2010). Please see the Bankruptcy [App-9, Docket # 13 entered on 09/29/2009], with the Trustee's report, "Chapter 7 Trustee's Report of No Distribution: I, H. Jason Gold, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any

27

further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 month. Assets Abandoned: $ 392470.00, Assets Exempt: $ 8028.00, Claims Scheduled: $ 466932.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 466,932.00 (Gold, H.)"

## VI. DEFENDANTS LACK STANDING
## SECURITIZATION CHAIN OF TITLE & STANDING[8]

55. Concerns about securitization chain[9] of title also go to the standing question; if the mortgages were not properly transferred in the securitization process (including through the use of MERS to record the mortgages), then the party bringing the foreclosure does not in fact own the mortgage and therefore lacks standing to foreclose.

56. Appellant Plaintiff's note [App-8],    was sold in securitization as unregistered and unregulated security, and Appellee Defendants do not own it as they have already sold it whatever they had at some time.

57. If the mortgage was not properly transferred, there are profound implications too for investors, as the mortgage-backed securities they believed they had

---

[8] No securitization participant in the chain has the power to satisfy a mortgage, foreclose on a mortgage, or to submit a credit bid at the time of foreclosure auction because they are not creditors and there is no money owed to them.

[9] All documents prepared or proffered by the pretender lenders are self-serving artifice designed to deceive the court.

purchased would, in fact be non-mortgage-backed securities, which would almost assuredly lead investors to demand that their investment contracts be rescinded, thereby exacerbating the scale of mortgage put back claims. If securitization is to work it must adhere to its proper, prescribed form punctiliously. The rules of the game with securitization, as with real property law and secured credit are, and always have been, that dotting "i's" and crossing "t's" matter, in part to ensure the fairness of the system and avoid confusions about conflicting claims to property.

58. Close enough doesn't do it in securitization; if you don't do it right, you cannot ensure that securitized assets are bankruptcy remote and thus you cannot get the ratings and opinion letters necessary for securitization to work. Thus, it is important not to dismiss securitization problems as merely "technical;" these issues are no more technicalities than the borrower's signature on a mortgage. Cutting corners may improve securitization's economic efficiency, but it undermines its legal viability.

### a. PROCEDURAL PROBLEMS AND FRAUD

59. The first type of problems in the mortgage market is what might generously be termed "procedural defects" or "procedural irregularities."

60. Affidavits need to be based on personal knowledge to have any evidentiary

effect; absent personal knowledge an affidavit is hearsay and therefore generally inadmissible as evidence. Accordingly, affidavits attest to personal knowledge of the facts alleged therein.

61. The most common type of affidavit is an attestation about the existence and status of the loan, namely that the homeowner owes a debt, how much is currently owed, and that the homeowner has defaulted on the loan.

62. Such an affidavit is typically sworn out by an employee of a servicer (or sometimes by a law firm working for a servicer). Personal knowledge for such an affidavit would involve, at the very least, examining the payment history for a loan in the servicer's computer system and checking it against the facts alleged in a complaint.

63. The problem with affidavits filed in many foreclosure cases is that the affiant lacks any personal knowledge of the facts alleged whatsoever.

64. Many servicers employ professional affiants, some of whom appear to have no other duties than to sign affidavits. These employees cannot possibly have personal knowledge of the facts in their affidavits.

65. When a servicer files an affidavit that claims to be based on personal knowledge, but is not in fact based on personal knowledge, the servicer is committing a fraud on the court, and quite possibly perjury. The existence of

foreclosures based on fraudulent pleadings raises the question of the validity of foreclosure judgments and therefore title on properties, particularly if they are still in real estate owned (REO).

66. The "robo-signing" of affidavits served to cover up the fact that loan servicers cannot demonstrate the facts required to conduct a lawful foreclosure. In essence, banks may be unable to prove that they own the mortgage loans they claim to own.

67. Unless an asset is transferred into lifetime trust, the asset does not become trust property. (New York Estates, Powers and Trusts Law § 7-1.18)

68. In Plaintiff's case there were no assignments executed and recorded in the county Lands Record. The note was not even endorsed as required by the Pooling and Servicing Agreement "PSA". The assignment of mortgage without transfer of the underlying Promissory Note is a nullity. (Merritt v. Bartholick, 36 N. Y 44 (1867); Kluge v. Fugazy, 145 A.D. 2d 537 (1988). A Trustee's (Bank of New York in this case) act that is contrary to the trust agreement is "VOID" (New York Estates, Powers and Trusts Law § 7-2.4)

69. If at any point the required legal steps are not followed to the letter, then the ownership of the mortgage loan could fall into question. The documentation

problems prove to be pervasive and, more importantly, throw into doubt the ownership of not only foreclosed properties but also pooled mortgages, the consequences could be severe.

70. Multiple banks may attempt to foreclose upon the same property. Borrowers who have already suffered foreclosure may seek to regain title to their homes and force any new owners to move out.

71. Thus, the only party that may enforce the rights associated with the mortgage, with standing to take action on a mortgage in a court, must be legally able to act on the mortgage. Accordingly, standing is critical for a successful foreclosure, because if the party bringing the foreclosure does not have standing to enforce the rights attached to the mortgage and the note, that party may not be able to take the property with clear title that can be passed on to another buyer.

72. Potential Flaws in the Recording and Transfer of Mortgages and Violations of Pooling and Servicing Agreements. Laws governing the transfer of real property in the United States were designed to create a public, transparent recordation system that supplies reliable information on ownership interests in property. Every county in the country maintains records of who owns land

there, of transfers of ownership, and of related mortgages or deeds of trust. While each state's laws have unique features, their basic requirements are the same, consistent with the notion that the purpose of the recording system is to establish certainty regarding property ownership.

a) In order to protect ownership interests, fully executed, original (commonly referred to as "wet ink") documents must be recorded in a grantor/grantee index at a county recording office. In the case of a purchaser or transferee, a properly recorded deed describing both the property and the parties to the transfer establishes property ownership. In Appellant Plaintiff's case nothing was done

b) Both the note and the mortgage need to be properly transferred. Without the note, a mortgage is unenforceable, while without the mortgage, a note is simply an unsecured debt obligation, no different from credit card debt.[10] To be transferred properly, both the loan and accompanying documentation must be transferred to the purchaser, and the transfer must be recorded. PSAs appear to require a complete chain of endorsements on the notes from originator up to the

---

[10]  Pepperdine Law Review, Vol. 37, at 758-759 (2010)

depositor, with a final endorsement in blank to the trust. In Appellant Plaintiff's case nothing was done.

c) A complete chain[11] of endorsement, rather than a single endorsement in blank with the notes transferred thereafter as bearer paper, is important for establishing the "bankruptcy remoteness[12]" of the trust assets.

d) PSAs are governed by New York law and create trusts governed by New York law. New York trust law requires strict compliance with the trust documents; any transaction by the trust that is in contravention of the trust documents is void, meaning that the transfer cannot actually take place as a matter of law. Therefore, if the transfer for the notes and mortgages did not comply with the PSA, the transfer would be void, and the assets would not have been transferred to the trust. Moreover, in many cases just like the Plaintiff's case, the assets could not now be transferred to the trust.

e) PSAs generally require that the loans transferred to the trust not be in

---

[11] Without a complete chain of endorsements, it is difficult, if not impossible, to establish that the loans were in fact transferred from originator to sponsor to depositor to trust, rather than directly from originator or sponsor to the trust. The questions about what the transfers required, therefore, involve both the question as to whether the required transfers actually happened, as well as whether, if they happened, they were legally sufficient.

[12] A critical part of securitization is to establish that the trust's assets are bankruptcy remote, meaning that they could not be claimed by the bankruptcy estate of an upstream transferor of the assets.

default, which would prevent the transfer of any non-performing loans to the trust now

f) PSAs frequently have timeliness requirements[13] regarding the transfer in order to ensure that the trusts qualify for favored tax treatment.

g) If so, the effect could be that rights were not properly transferred during the securitization process such that title to the mortgage and the note might rest with another party in the process other than the trust.

## VII. APPELLEE -DEFENDANTS FAILED TO ATTACH NOTE AND DEED OF TRUST

73. In a foreclosure action, this means that both the note and the mortgage and any assignments of either must be attached. Beyond the rules of civil procedure requirement, these documents are also necessary as an evidentiary matter to establish that the bank has standing to bring the foreclosure.

74. Many foreclosure complaints are facially defective and should be dismissed because they fail to attach the note. Failure to attach the note appears to be routine practice for some of the foreclosure mill law firms.

## VIII. APPELLEE DEFENDANT'S FAILURE IN THE CHAIN OF TITLE

---

[13] 90 day after the cutoff date

75. Mortgage notes were not typically transferred to the trusts, as required by law. Further, there is no clear "chain of title" for these notes--which are actually presented with the fake and fraudulently endorsement only on foreclosure. In Appellant Plaintiff's case the note is totally blank and does not have any endorsement. The chain of transfer was broken

76. *Promissory notes still require an endorsement and delivery from the current owner to the next owner in order to change the beneficial ownership of a mortgage loan, which is absent in Plaintiff's case.*

77. Further, the Note is part of larger securitization process[14] in the absence of the original note endorsed to Appellee Defendant; cannot claim ownership or the authority to foreclose.

IX. DEFENDANTS USED PLAINTIFF'S IDENTITY AND PERSONAL INFORMATIONS WITHOUT PLAINTIFF'S CONSENT, KNOWLEDGE AND PERMISSION

78. Plaintiffs signed the "Promissory Note" and the investors received the "Bond", and both the note and bond have different terms. Defendants sold the Plaintiff's note as unregistered and unregulated security without the

---

[14] It is documented that the Note has been sold several times the nominal "lender", that being Defendant America's Wholesale Lender, never had any intention of retaining ownership interest in the mortgage loan or fully servicing same. In fact, America's Wholesale Lender, with the help of Countrywide, already pre-sold the loan, prior to Plaintiffs' closing, to a third-party mortgage aggregator pursuant to previously executed documentation. The Assumption and Assignment Agreement, Pooling Services Agreement, etc. were all executed prior to Plaintiffs' closing.

knowledge and permission of the Plaintiff. By the method of pooling and trenching, they converted the Note from a negotiable to non-negotiable instrument. (Article VIII UCC). That means that upon transfer the recipient of the payment is satisfied in full and a new obligation arose between the seller and buyer separate and apart from the borrower as the borrower was not party to the Bond deal. Further, the method calls for the proceeds of payment from one Note to be used as collateral (cross collateralization) for another. This breaches the terms of the note which states that payments by borrower will be applied to what the borrower owes.

79. Plaintiff was not a part in the bond deal and Defendants used the Plaintiff's identification and personal information without the permission, knowledge and consent of the Plaintiff.

### X. DEED OF TRUST IS VOID AND THE NOTE IS UNSECURED DUE TO "MERS" NAMING AS BENEFICIARY(not a creditor)

80.     Defendant "MERS" was named as beneficiary on the Deed of Trust, when Defendant "MERS" was not a creditor and there was no name of Defendant "MERS" on the Promissory Note. Defendant "MERS" cannot be a beneficiary on the Deed of Trust and this renders the Deed of Trust "VOID[15]" and the Note becomes "UNSECURED. The Deed of Trust and

---

[15] There is no clear reason why deeds of trust would be any different in this respect. Domarad v. Fisher & Burke, Inc. 270 Cal App 2d 543, 76 Cal Rptr 529, 535-36 (Cal App 1st Dist 1969) ("[A] deed of trust is *inseparable* from the debt and *always* abides with the debt, and it has *no market or ascertainable value, apart from* the obligation it

Note has been separated due to Defendant "MERS" as beneficiary on the Deed of Trust. Carpenter v. Longan, 83 U.S. 271, 274, (1872) (emphasis added); *See also* Nagle v. Macy 9 Cal. 426, 1858 WL 818 (Cal. 1858) ("The debt and the mortgage are inseparable.") ; Landmark Nat. Bank v. Kesler, 216 P.3d 158,168 (Kan. 2009).

---

secures.") (emphasis added); Disque v. Wright, 49 Iowa 538, 1878 WL 623 (Iowa 1878) ("It has been frequently held that slight omissions in the acknowledgment of a deed destroy the effect of the record as constructive notice. *A fortiori,* it seems to us, should so important and vital an omission as that of the name of the grantee have that effect."); Chauncey v. Arnold, 24 N.Y. 330 (N.Y. 1862) ("No mortgagee or obligee was named in [a mortgage], and no right to maintain an action thereon, or to enforce the same, was given therein to the plaintiff or any other person. It was, *per se,* of no more legal force than a simple piece of blank paper."); Richey v. Sinclair, 47 N.E. 364 (Ill. 1897) ("The law is well settled that a deed without the name of a grantee is invalid. It is said there must be in every grant a grantor, a grantee, and a thing granted; and a deed wanting in either essential will be void."); Allen v. Allen, 51 N.W. 473, 474 (1892) (omission of name of grantee invalidated conveyance because "A legal title to real property cannot be established by parol."); 59 CJS MORTGAGES § 306 ("Notice may be deemed not present in cases of insufficient attestation or where the instrument itself is so defective as to be void as a matter of law, as where it wholly omits the name of the mortgagee.") (Citations omitted). 5-Star Management, Inc. v. Rogers, 940 F.Supp. 512, 521 n.5 (E.D.N.Y. 1996) ("The Court observes that a determination that the mortgage at issue, having been separated from the underlying promissory note, may be unenforceable would not leave the plaintiff in possession of a worthless instrument. This conclusion obtains because the plaintiff presumably can sell the mortgage to the holder of the underlying obligation. The plaintiff also can purchase the underlying obligation from the holder of the note. In that case, plaintiff, as holder of both the mortgage and the note, could foreclose on the mortgage on the New York Property."). The inherent problem in this position is that it is unclear how MERS would assign the mortgage to someone if it is not a mortgagee. Surely MERS cannot assign something that it does not own. Even if MERS is attempting to assign the mortgage as an agent, it remains unclear in most cases who MERS is assigning the mortgage for since, after all, the security agreement does not specify who (other than MERS) owns the mortgage in the first place. 5-Stars Management, 940 F.Supp. at 520 ("To allow the assignee of a security interest to enforce the security agreement would expose the obligor to a double liability, since a holder in due course of the promissory note clearly is entitled to recover from the obligor.") (Citation omitted). HSBC Bank USA, NA as Trustee for Monura Asset Acceptance Corporation, Mortgage Pass-Through Certificates Series 2006-ARI v Eslava, Hearing Transcript on Order to Show Cause, No. 1-2008-CA-055313, at 17-18 (Fl 11th Cir. Ct., Miami-Dade County, May 6, 2010) (dismissing foreclosure complaint with prejudice, cancelling promissory note, and conveying clear title to homeowner as a sanction for inconsistent record keeping and litigation tactics); Deutsche Bank National Trust Company, as Trustee for GSAMP 2006-FMI v. Lippi, No. CA08-0127 (Fla. 7th Cir. Ct., St. Johns County, Feb. 11, 2010) (order dismissing foreclosure complaint with prejudice on MERS recorded loan for failure to show any evidence of standing following two years of litigation and multiple dismissals with leave to amend); HSBC Bank USA, N.A. v. Yeasmin, 27 Misc.3d 1227, 2010 WL 2089273 (N.Y. Sup. 2010) (cancelling foreclosure action on MERS recorded loan in an order that states: "The instant motion, attempting to cure the four defects explained by the Court . . . are so incredible, outrageous, ludicrous and disingenuous that they should have been authored by the late Rod Sterling, creator of the famous science-fiction television series, *The Twilight Zone."*).

81. Financial institutions have been cavalier about informing MERSCORP of changes in servicing and ownership rights of mortgages because they believe there are no legal penalties for neglecting to make this information available.

82. MERS's rights vis-à-vis mortgages registered on the MERSCORP database have created a conundrum for courts, borrowers, and foreclosure attorneys. In boilerplate security agreements included in mortgages and deeds of trust around the country, lenders include this clause.

83. "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is *acting solely as nominee for Lender* and Lender's successors and assigns. *MERS is the mortgagee* under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

84. This passage, and a similar passage naming MERS the beneficiary in deeds of trust, is confusing to courts, borrowers, and even foreclosure attorneys. On the one hand, MERS purports to be acting as a nominee—a form of an agent. On the other hand, it also is claiming to be an actual mortgagee, which is to say an owner of the real property right to foreclose upon the security interest. It is axiomatic that a company cannot be both an agent and a principal with respect to the same right.

85. In litigation all across the country, attorneys representing MERS frequently take inconsistent positions on the legal status of the company, depending on the legal issue at hand.

86. Both the MERS-as-an-agent and the MERS-as-an-actual mortgagee theories have significant legal problems. If MERS is merely an agent of the actual lender, it is extremely unclear that it has the authority to list itself as a mortgagee or deed of trust beneficiary under state land title recording acts. These statutes do not have provisions authorizing financial institutions to use the name of a shell company, nominee, or some other form of an agent instead of the actual owner of the interest in the land. After all the point of these statutes is to provide a transparent, reliable, record of actual—as opposed to nominal—land ownership.

87. These cases do not merely hold that mortgages follow notes as a matter of default law, but that mortgages cannot legally be separated from notes. Thus, in Carpenter v. Longan the United States Supreme Court announced the classic statement of this rule: "the note and mortgage are *inseparable*…, the assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

88. Unlike mortgage loan servicers who are compensated for foreclosure services, Defendant "MERS" does not receive any compensation for

assisting in foreclosures. Deposition of R. K. Arnold CEO of "MERS",

Henderson v. MERSCORP, INC., et al., CV-08-900805.00, Circuit Court

for Montgomery County Alabama, September 25, 2009, at 88 (hereinafter:

Arnold Deposition).

89. *In re Bird*, 2007 WL 2684265, at ¶¶ 2-4 (Bkrtcy.D.MD. 2007) ("The note and
mortgage are inseparable; the former as essential, the latter as an incident. An
assignment of the note carries the mortgage with it, while an assignment of the latter
alone is a nullity. . . . It is equally absurd to assume that such bifurcation was
intended because such a bifurcation of the note from the deed of trust would render
the debt unsecured.");

90. *In re Leisure Time Sports, Inc.* 194 B.R. 859, 861 (9th Cir.1996) (stating that "[a]
security interest cannot exist, much less be transferred, independent from the
obligation which it secures" and that, "[i]f the debt is not transferred, neither is the
security interest");  In re BNT Terminals, Inc., 125 B.R. 963 (Bankr. N.D. Ill. 1990)
("An assignment of a mortgage without a transfer of the underlying note is a nullity.
. . .  It is axiomatic that any attempt to assign the mortgage without transfer of the
debt will not pass the mortgagee's interest to the assignee."); Yoi-Lee Realty Corp.
v. 177th Street Realty Associates, 208 A.D.2d 185, 626 N.Y.S.2d 61, 64 (N.Y.A.D.
1 Dept.,1995)  ("The mortgage note is inseparable from the mortgage, to which the
note expressly refers, and from which the note incorporates provisions for default.");

91. In re  AMSCO, Inc ., 26 B.R. 358, 361 (Bkrtcy. Conn., 1982) (reaffirming that "[t]he
note and mortgage are inseparable"); Barton v. Perryman, 577 S.W.2d 596, 600
(Ark., 1979) ("[A] note and mortgage are inseparable."); Trane Co. v. Wortham, 428
S.W.2d 417, 419 (Tex. Civ. App. 1968) ("The note and mortgage are inseparable. . .
."); Kirby Lumber Corp. v. Williams, 230 F.2d 330, 333 (5th Cir. 1956) ("The rule is

fully recognized in this state that a mortgage to secure a negotiable promissory note is merely an incident to the debt, and passes by assignment or transfer of the note. * * * The note and mortgage are inseparable. . . .");  *Kelley v. Upshaw,* 39 Cal.2d 179, 192, 246 P.2d 23 (1952)  ("In any event, Kelley's purported assignment of the mortgage without an assignment of the debt which is secured was a legal nullity.");

92. Hill v. Favour, 52 Ariz. 561, 84 P.2d 575 (Ariz. 1938) ("The note and mortgage are inseparable; the former as essential, the latter as an incident.)"; Dennison v. C.I.R., 37 B.T.A. 834, 1938 WL 373 (B.T.A. 1938)  ("All the authorities agree that the debt is the principal thing and the mortgage an accessory. . . The mortgage can have no separate existence."); West v.  First Baptist Church  of Taft, 123 Tex. 388, 71 S.W.2d 1090, 1098 (Tex. 1934) ("The trial court's finding and conclusion ignore the settled principle that a mortgage securing a negotiable note is but an incident to the note and partakes of its negotiable character.  . . . The note and mortgage are inseparable; the former as essential, the latter as an incident.") (citations omitted); First Nat.  Bank  v. Vagg, 65 Mont. 34, 212 P. 509, 511 (Mont. 1922) ("A mortgage, as distinct from the debt it secures, is not a thing of value nor a fit subject of transfer; hence an assignment of the mortgage alone, without the debt, is nugatory, and confers no rights whatever upon the assignee.

93. The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while the assignment of the latter alone is a nullity. The mortgage can have no separate existence.") (citations omitted); Southerin v. Mendum, 5 N.H. 420, 1831 WL 1104, at ¶ 7 (N.H. 1831) ("[T]he interest of the mortgagee is not in fact real estate, but a personal chattel, a mere security for the debt, an interest in the land inseparable from the debt, an incident to the debt, which cannot be detached from its principal.").

## XI. DEFENDANT'S NOT RESPONDED APPELLANT'S DISCOVERY

94. **Appellant Plaintiff asked in request for discovery for accounting of the Appellee Defendants as the Appellant Plaintiff's monthly mortgage payments were not properly accounted for.** [App-5, Docket # 12, 13, 14, 15 dated 10/01/2010 ]

95. **Appellee Defendants have not provided the documents requested, because the defendants are afraid of getting exposed before the court for their fraud and falsifications.** [App-5,  Docket # 22 dated 10/22/2010, Docket # 26 dated 11/04/2010 ]

96. **Appellee Defendant's failed to provide the information and documents requested** [App-5, Docket # 29,30,31 dated 11/30/2010 ]

97. **Appellee Plaintiff reserved the right to file amended complaint when the Appellee Defendant's will provide the proper response to discovery, but District court erred and failed to take notice and decided the case** without hearing.

XII. <u>TRUST HAVE BEEN DISSOLVED</u>

98. A trust cannot stand if any of the following elements exist:

   a) The Trustee wears "two hats" – such as we see in the instant case;

   b) Where the trust paperwork that cannot be produced because it existed in name[16] only or as an inter-office memo;

---

[16] The mere fact that a "trustee" for a Trust Series took over as "trustee" for Plaintiff's mortgage note does not mean it was actually entered into the Trust itself. For example, let's say that if the "Alternative Loan Trust CWALT-2007-5CB" was dissolved prior to Plaintiff's mortgage loan being assigned to the Trustee (in this case, Bank of New York

c) The Trustee commits an act of fraud in his official capacity; thus bringing the trust under scrutiny of any jurisdictional authority- such as we see in the instant case;

d) The actual Trust Document is not properly drafted or signed by all the parties.

e) The actual Trust Document and/or accompanying Affidavit were never executed; or if they were executed, were not properly notarized;

f) The Trust Document gave anyone outside of the parties named in the Trust express authority to transfer assets out of the trust without consent of the beneficiaries which would diminish the value (the "res") of the trust.  Such as in the instant case, the actions of certain robo-signers.

g) The trust contains nothing of value. (Corpus of Trust is not there) The <u>Deed of Trust IS a Trust instrument and, as such, must meet certain criteria to be valid.  The key criteria are as follows:</u>

---

the trustee of that Trust Series (primarily through lack of "res" and purpose) Plaintiff's note may have been flushed through this Trustee (since he can convey, etc.; all the duties you as Grantor conveyed to him to do) as a conduit to another third party for "safe keeping".  This could have been done as part of a write-down of losses for that particular Trust Series (through insurance payouts and other credit enhancements and deviations of GAAP ).

1) There must be a <u>clear intention to create a trust</u> (usually evidenced by the trust instrument).

2)    There must be a Trustor/Grantor to create the trust.

3)    There must be a trust corpus or assets

4)    There must be duties assigned to the Trustee

5) There must be ASCERTAINED or ASCERTAINABLE Beneficiaries OR put another, way <u>there is no such thing as a "straw" or "nominal" beneficiary and, without ASCERTAINED or ASCERTAINABLE Beneficiaries the Trust instrument is VOID.</u>

6)    <u>Without Promissory note</u> (asset & Corpus) there cannot be a valid trust and without a valid trust there is no longer need for any security called DOT. So the <u>Corpus of trust is not there.</u>

99. Dismantling of "QSPE" / "TRUST" and consolidation of Bank's Balance sheets demonstrate the falsity of foreclosures. Assignments to a Trust is now gone. Mezzanine Tranches are locked out long before their time, market collapsed due to the trigger events topped, when cumulative losses on the mortgage are higher than the certain level and delinquency event occurred and as a result of credit default swaps payments were executed, senior

tranches were paid and nothing remained  for the Mezzaine Tranches, who were already getting nothing as these were locked out, the trust was dissolved;

a)    No payments are owed to any certificate holders (Tranches) or synthetic security holders (derivatives)

b) How can a fabricated document are formalized to trust after dissolution of TRUST.

c) Fabricated documents to a Trust that no longer function and for which "TRUSTEE'S DUTIES" have been TERMINATED

d) Currently no distribution to certificate holders, even for the "CURRENTLY PAYING MORTGAGES".

e) Payments are not being directed to the original designated trust, "Alternative Loan Trust CWALT-2007-5CB" in Plaintiff's case, because the trigger event and payments of credit default swaps, insurance proceeds, caused its demise.

f) Appellant Plaintiff requested to the Appellee Defendant's counsel to do his duty as "officer of the court" must respond to this inaccuracy, falsification, misleading the courts, fraud upon court and on the Appellant Plaintiff, but District Court erred, failed to take notice and decided the case without hearing.

g) Since Trust has been dissolved and Bank of New York is no more Trustee, has acted wrongly through the Appellee Defendants in regard to the issue at hand and now acting without any standing, "those seeking equity must do equity"

100.    There was Fraud in the Factum since securitizations often are involved. The truth is that there was fraud in the Factum. The Defendants filings with the Securities and Exchange Commission (SEC) shows interconnected and affiliated parties that aided and abetted a pattern of fraud by the originating lender and, thus, trust cannot acquire the rights of a holder-in-due-course per U.C.C.§ 3-203 (b). To use participation theories, we must show that financial institutions providing lending capital for a predatory lending scheme are dictating loan terms or, at least, are aware of the predatory characteristics of the loans (*England v. MG Investments*, Inc., 93 F. Supp. 2d 718 (S.D. W.Va 2000)).

<u>NOTICE OF REMOVAL WAS NOT TIMELY,</u>
<u>DEFENDANTS FALSIFIED</u>

101.    Appellee Defendant's notice of removal was not timely. Appellee Defendants filed the notice on 07/19/2010, after 48 days and falsified before the court that removal notice is less than 30 days, whereas the notice was filed after 48 days. [App-5 Docket #1 dated 07/19/2010 ] Please see Plaintiff's objection to Defendant's fraud and falsification [App-5, Docket # 5 dated 08/16/2010 ]

102.    Appellant plaintiff first seeks a default judgment and, a remand the case back to state court, because the time limit for removal is mandatory, *see McKinney v. Bd.*

*of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 925 (4th Cir. 1992), and if the Notice of Removal was not timely filed the case should be remanded without further proceedings. In the present case the notice of removal was not timely and Defendants falsified in writing and said that "the notice of removal was less than 30 days "when it was filed after 48 days just to mislead the court. A notice of removal must be filed within thirty days of receipt by the defendant through formal service of the state court process. *See* 28 U.S.C.A. § 1446(b) (West 1994); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 342, 347-48 (1999)

<u>ONCLUSION</u>

For the foregoing reasons, the Plaintiff-appellant, Asad Sammi Niyaz, respectfully requests this honorable Court as under:-

A. The case is remanded back to state court, notice of remand was untimely and because the due to the Defendant's action the Title has been clouded.

B. Defendants are compelled to answer the Appellant Plaintiff's discovery, so that Plaintiff can show the real face of all Appellee Defendants who are acting ultra-virus.

C. Since Appellant Plaintiff is not in default and Appellee Defendants are in default because they are not following the proper accounting as per "GAAP" and "GAAP", thus not applying the payments received from the Appellant correctly

48

D. To order the Appellee Defendants to produce the complete accounting showing the third party payments, received by the Appellee Defendants in connection with the Appellant Plaintiff's account/loan

E. To grant the injunction to the Appellant Plaintiff till the outcome of this case and seeing the complete accountings of the Appellee Defendants

F. To dismiss the Appellee Defendant's foreclosure case against the Appellant's residence, with prejudice because it is fraud upon the court by the Appellee Defendants, who used fake, fabricated and illegal document in support of their illegal and fraudulent foreclosure, with robo-signer such as Ms. Julie Webb

Respectfully submitted

Asad Sammi Niyaz
20278 Glen robin Terr,
Ashburn VA 20147
October _04_ , 2011


## REQUEST FOR ORAL ARGUMENT

The Plaintiff-Appellant, Asad Sammi Niyaz Pro Se, respectfully requests oral argument. This appeal (briefly describe what issues the appeal presents to the court). Oral discussion of the facts and the applicable precedent would benefit the Court in disposing the appeal and doing justice with the appellant who has been deprived.


Respectfully submitted please,

49

Asad Sammi Niyaz
20278 Glen robin Terr,
Ashburn VA 20147
October _04_ , 2011


## CERTIFICATEOFSERVICE

I, Asad Sammi Niyaz,  Pro Se, certify that today, October 4, 2011, a copy of the

brief for appellant, a copy of the record excerpts, and the official record in this

case, consisting of NUMBER volume(s) of the pleadings, NUMBER volumes of

transcript, NUMBER volumes of supplemental record, and NUMBER envelope(s)

of exhibits, were served upon  to all of the Defendants through Defendant's

Counsel on record, Mr. Constantinos G, Panagopoulos at his office address located

at 601 13th Street NW, Suite 1000 South Washington DC 20005 and to Mr. Samuel

I. White PC on his office address located at, 5040 Corporate Woods Drive Suite

120 Virginia Beach VA 23462-6523 via USPS, first class mail postage paid.

*Asad S. Niyaz*

Asad Sammi Niyaz
20278 Glen robin Terr, Ashburn VA 20147
Date *10/04/11*
sameeniyaz@gmail.com

No. 11-1101

# In The

# Supreme Court of the United States

---

**Asad Niyaz**

Petitioner,

V.

**Bank of America et al**

Respondents

---

## On Petition for Writ of Certiorari

## To The United States Court of Appeals

## For The Fourth Circuit

# PETITION FOR WRIT OF CERTIORARI

# LIST OF APPENDIX

---

**ASAD SAMMI NIYAZ**

**20278 GLENROBIN TERRACE**

**ASHBURN VIRGINIA 20148**

**(571) 275-0831**

**Pro se Petitioner**